IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| HUTTO CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:06CV404-T** |
| | ) | |
| BUFFALO HOLDINGS, LLC., | ) | |
| | ) | |
| Defendant. | ) | |

## EVIDENTIARY SUBMISSION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This evidentiary submission is filed in support of the Motion for Summary Judgment filed by Defendant herewith.  References to tabs contained in the motion correspond to the following tabs.

Mortgage to Bank of Wedowee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . Tab A

Judgment against Redhawk Ventures, LLC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab B

Foreclosure Deed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab C

Order holding Clayton Bailey and Wendelin Werley individually liable for judgment  . . . . Tab D

Deed from Bank of Wedowee to Buffalo Holdings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab E

s/ Guy V. Martin, Jr.
Guy V. Martin, Jr.   (MAR011)
MARTIN, RAWSON & WOOSLEY, P.C.
#2 Metroplex Drive, Suite 102
Birmingham, Alabama 35209

ATTORNEY FOR THE DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have, on this the 6th day of July, 2006, caused the above and foregoing pleading to be served on opposing counsel of record by placing a true and correct copy thereof into the United States mail, first class postage prepaid, addressed as follows:

John A. Tinney, Esq.
Post Office Box 1430
739 Main Street
Roanoke, Alabama 36274

_s/ Guy V. Martin, Jr._
OF COUNSEL

# TAB A

Recorded In Above Book and Page
08/29/2002 02:52:40 PM
Mack Diamond
Probate Judge
Randolph County, Alabama

This instrument was prepared by ..... Bank of Wedowee .............. (name)
...... 111 West Broad Street ...... Wedowee, AL 36278 ...... (address).

| | |
|---|---|
| Mortgage Tax | 2917.50 |
| Recording Fee | 30.00 |
| TOTAL | 2947.50 |

——— State of Alabama ———————————— Space Above This Line For Recording Data ———

# REAL ESTATE MORTGAGE
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is .......... July 15, 2002 ............ and the
parties, their addresses and tax identification numbers, if required, are as follows:

MORTGAGOR:
    CLAYTON BAILEY, A SINGLE MAN

    260 GENEVA DRIVE
    EAST EURORA, NY 14052

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and
acknowledgments.

LENDER:
    Bank of Wedowee
    111 West Broad Street
    Wedowee, AL 36278

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to
secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants,
bargains, sells, conveys and mortgages to Lender, with power of sale, the following described property:

    SEE EXHIBIT "A" FOR LEGAL DESCRIPTION CONSISTING OF ONE (1) PAGE
    BEING ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE.

    THIS PROPERTY IS NOT THE HOMESTEAD OF THE GRANTOR.

The property is located in ....... RANDOLPH ................................................ at ..............................................
                           (County)
.................. HIGHWAY 431 NORTH .................., ...... WEDOWEE .........................., Alabama ..36278 ..........
         (Address)                 (City)                (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all
diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches,
reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now,
or at any time in the future, be part of the real estate described above (all referred to as "Property"). The Security
Instrument will remain in effect until the Secured Debt and all underlying agreements have been terminated in writing by
Lender.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
not exceed $ 1,945,000.00 .............................. . This limitation of amount does not include interest and other fees
and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under
the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this
Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described
    below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is
    suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

        on promissory note made to
        REDHAWK VENTURES LLC      and CLAYTON O BAILEY       *
        maturing on  7/15/03  at the rate of  6.000 in the amount of
        1,972,336.71

ALABAMA - AGRICULTURAL/COMMERCIAL MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)    *(page 1 of 6)*

*Experts* © 1994 Bankers Systems, Inc., St. Cloud, MN  Form AG/CO-MTG-AL 4/11/2000

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, sell, convey and mortgage with power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances noted above.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:
   A. A beneficial interest in Mortgagor is sold or transferred.
   B. There is a change in either the identity or number of members of a partnership or similar entity.
   C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.
   However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall continue as long as the Secured Debt remains outstanding:
   A. Mortgagor is duly organized and validly existing in Mortgagor's state of incorporation or organization. Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.
   B. The execution, delivery and performance of this Security Instrument by Mortgagor and the obligations evidenced by the Secured Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
   C. Other than previously disclosed in writing to Lender, Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.



**17. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, including without limitation, the power to sell the Property, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

If Lender initiates a judicial foreclosure, Lender shall give the notices as required by applicable law. If Lender invokes the power of sale, Lender shall publish the notice of sale, and arrange to sell all or part of the Property, as required by applicable law. Lender or its designee may purchase the Property at any sale. Lender shall apply the proceeds of the sale in the manner required by applicable law. The sale of any part of the Property shall only operate as a foreclosure of the sold Property, so any remaining Property shall continue to secure any unsatisfied Secured Debt and Lender may further foreclose under the power of sale or by judicial foreclosure.

If Lender invokes the power of sale, Lender will place in the United States mail a copy of the notice of sale to Mortgagor that Lender will cause to be published once a week for three consecutive weeks in a newspaper published in the county where the Property is located. Then, Lender will sell the Property to the highest bidder at public auction at the front door of the courthouse in the county where the Property is located. Lender will deliver to the purchaser Lender's deed conveying the Property. Lender may opt to sell the Property in parcels or as a whole. Lender or its designee may purchase the Property at any sale. Mortgagor covenants and agrees that the proceeds of the sale will be applied in the following order: (a) to the expense of advertising, selling and conveying, including a reasonable attorney's fee; (b) the payment of any amounts that may have been expended, or that may then be necessary to expend, in paying insurance, taxes, or other encumbrances, with interest thereon; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it.

**18. REDEMPTION.** The period of redemption after sale on foreclosure shall be one year. Any agreement to extend the redemption period must be in writing.

**19. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

**20. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
   C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.
   D. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.
   E. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.
   F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.
   G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.
   H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

*(page 4 of 6)*



MORT    432    770

**13. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**14. ASSIGNMENT OF LEASES AND RENTS.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor absolutely, unconditionally, irrevocably and immediately assigns, grants, bargains, conveys and mortgages to Lender all the right, title and interest in and to any and all:
   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases).
   B. Rents, issues and profits (all referred to as Rents), including but not limited to security deposits, minimum rent, percentage rent, additional rent, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Assignor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property.

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Security Instrument, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed.

Lender grants Mortgagor a revocable license to collect, receive, enjoy and use the Rents as long as Mortgagor is not in default. Mortgagor's default automatically and immediately revokes this license. Upon default, Mortgagor will receive any Rents in trust for Lender, and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses.

Mortgagor agrees that Lender will not be considered to be a mortgagee-in-possession by executing this Security Instrument or by collecting or receiving payments on the Secured Debts, but only may become a mortgagee-in-possession after Mortgagor's license to collect, receive, enjoy and use the Rents is revoked by Lender or automatically revoked on Mortgagor's default, and Lender takes actual possession of the Property. Consequently, until Lender takes actual possession of the Property, Lender is not obligated to perform or discharge any obligation of Mortgagor under the Leases, appear in or defend any action or proceeding relating to the Rents, the Leases or the Property, or be liable in any way for any injury or damage to any person or property sustained in or about the Property.

Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. This assignment is enforceable when Lender takes an affirmative action as prescribed by the law of the state where the Property is located. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied.

As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so required) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts.

**15. LEASEHOLDS; CONDOMINIUMS; TIME-SHARES; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium, time-share or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development. In addition, except with the written approval of Lender, Mortgagor will not partition or subdivide the Property; abandon or terminate the condominium, time-share or planned unit development project; terminate professional management; or amend any provision of the covenants, bylaws or regulations of the condominium, time-share or planned unit development if the provision benefits Lender.

**16. DEFAULT.** Mortgagor will be in default if any of the following occur:
   A. Any party obligated on the Secured Debt fails to make payment when due;
   B. A breach of any term or covenant in this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any other person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.



MORT    432    771

    I.   Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

    J.   Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

    K.  As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.

    L.   Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**21. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**22. INSURANCE.** Mortgagor agrees to maintain insurance as follows:

    A.  Mortgagor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt existing immediately before the acquisition.

    B.  Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

    C.  Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

**23. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**24. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

**25. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

**26. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**27. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

**28. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement rights relating to the Property.

Exerₑ © 1994 Bankers Systems, Inc., St. Cloud, MN Form AG/CO-MTG-AL 4/11/2000

**29. U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Security Instrument:

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues, and Profits.** Mortgagor grants to Lender a security interest in all crops, timber and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐ **Personal Property.** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property, including all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property (all of which shall also be included in the term "Property"). The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Mortgagor agrees and acknowledges that this Security Instrument also suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

**30. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until the Secured Debt is paid in full and all underlying agreements have been terminated in writing by Lender.

☐ **Agricultural Property.** Mortgagor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Mortgagor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Entity Name: ..........................................    Entity Name: ..........................................

...................................... (Seal)    .......................................... (Seal)
(Signature) REDHAWK VENTURES LLC    (Date)    (Signature) CLAYTON O BAILEY    (Date)

...................................... (Seal)    .......................................... (Seal)
(Signature)    (Date)    (Signature)    (Date)

...........................................    ...........................................
(Witness as to all Signatures)    (Witness as to all signatures)

**ACKNOWLEDGMENT:**

(Individual) STATE OF .... ALABAMA .. New York ......., COUNTY OF .. WHATEVER .. Erie ...... } ss.

I, a notary public, hereby certify that .... REDHAWK VENTURES LLC .... CLAYTON O BAILEY ..........

.............................. whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily on the day the same bears date. Given under my hand this ............ 17th ........... day of ... JULY ,.. 2002 ......

My commission expires: .. 7/31/2005 ......

(Seal) G. WILLIAM GUNNER    ..................................... 
                                        (Notary Public)

(Business or Entity Acknowledgment) STATE OF ......................., COUNTY OF .......................... } ss.

I, a notary public, in and for said County in said State, hereby certify that ..............................

.............................................. whose name(s) as ..........................
                                                          (Title(s))
of the ........................................................
                                      (Name of Business or Entity)
a .............................................. is/are
                    (Describe the Type of Entity),
signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she/they, in such capacity and with full authority, executed the same voluntarily for and as the act of said entity. Given under my hand this the ....................... day of ............................. .

My commission expires:
(Seal)    ..................................... 
                              (Notary Public)

Exsera  © 1994 Bankers Systems, Inc., St. Cloud, MN  Form AG/CO-MTG-AL 4/11/2000    *(page 6 of 6)*

EXHIBIT "A"

DATE:    7/15/02

GRANTOR: CLAYTON BAILEY

Commence at the Southwest corner of Section 34, Township 19 South, Range 11 East in Randolph County, Alabama; thence run North 2 degrees 06 minutes East along the section line a distance of 420 feet to the point of beginning; thence continue North 2 degrees 06 minutes East along the section line a distance of 3215 feet to point on the South side of Lake Wedowee (Wedowee Creek) at the approximate 795 foot contour; thence run in a Southeasterly direction along the approximate 795 foot contour a distance of 2131.4 feet to a point on the 795 foot contour and the West right-of-way of U.S. Highway No. 431; thence run in a Southeasterly direction along the West right-of-way of U.S. Highway No. 431 a distance of 1750 feet to a point on the West ROW of said highway; thence run North 81 degrees 25 minutes West a distance of 183.2 feet to a point; thence run South 21 degrees 35 minutes West a distance of 529 feet to a point; thence run West a distance of 672.5 feet to a point; thence run South 16 degrees 36 minutes West a distance of 210 feet to a point; thence run South 88 degrees 36 minutes West a distance of 1057.4 feet to a point; thence run North 2 degrees 06 minutes East a distance of 420 feet to a point; thence run South 88 degrees 36 minutes West a distance of 262 feet to the point of beginning.  Less and except: Beginning at a monument marking Station 53+00 on West right of way line of U.S. Highway 431 Project Number F 167(9); thence South 19 degrees 11 minutes 55 seconds East along said ROW line 109.19 feet; thence North 81 degrees 25 minutes 00 seconds West 179.11 feet; thence North 81 degrees 25 minutes 00 seconds West 144.34 feet; thence North 13 degrees 42 minutes 42 seconds West 220.00 feet; thence South 81 degrees 25 minutes 00 seconds East 330.00 feet to said West ROW line; thence South 05 degrees 05 minutes 29 seconds East along said ROW line 110.07 feet to the true point of beginning.  Containing 1.49 acres, more or less.

This land being and lying in the SW1/4 of SW1/4, SE1/4 of SW1/4, NW1/4 of SW1/4, NE1/4 of SW1/4 and the SW1/4 of NW1/4 all in Section 34, Township 19 South, Range 11 East in Randolph County, Alabama, and containing 125 acres, more or less.

Less and except all easements, ownership and interest of the Alabama Power Company to that portion of the above described property that lies below the 800 foot mean sea level elevation marks, Huntsville Meridian.

SIGNED: _Clayton O. Bailey_

STATE OF ALABAMA, [...] County.
I, George Diamond, Judge of Probate [...] County,
hereby certify under my hand and official [...]
and foregoing is a true and correct copy of instrument as same appears
of record in this office, recorded
Mortgage Record _432_, page _767_
[...] this the _16th_ day of _June_, 202_6_
_George Diamond_ Judge of Probate

# TAB B

LYEH    17    291
Recorded In Above Book and Page
12/12/2002 02:32:54 PM
Mack Diamond
Probate Judge
Randolph County, Alabama

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

| | | Recording Fee | 12.00 |
| | | TOTAL | 12.00 |

JOE FRANK HUTTO
CONSTRUCTION COMPANY,
INC.                                    )

            PLAINTIFF            )

VS.                                        )          CASE NO. _CV 2002-183_

RED HAWK VENTURES, LLC    )

            DEFENDANT         )

## Filed in Office

DEC 1 2 2002

KIM S. BENEFIELD
Clerk of Circuit Court

### JUDGMENT

The Court has before it a Complaint and Answer in connection with the

above matter. After reviewing the Complaint and Answer filed herein the Court is

of the opinion that the Plaintiff is entitled to the relief prayed for in the Complaint.

It is therefore

*ORDERED, ADJUDGED AND DECREED* that Plaintiff have and recover

of the defendant the sum of $313,500.34. Judgment is hereby entered against

defendant Red Hawk Ventures, LLC in favor of the Plaintiff for the sum of

$313,500.34 plus cost of these proceedings.

DONE and ORDERED this 12th day of December, 2002.

_____
Judge

TAB
C

DEED    305    58
Recorded In Above Book and Page
11/12/2003 11:15:01 AM
George Diamond
Probate Judge

**THIS INSTRUMENT PREPARED BY:**
Jesse S. Vogtle, Jr.
Balch & Bingham LLP
P.O. Box 306
Birmingham, Alabama 35201

SEND TAX NOTICE TO:
**Bank of Wedowee**
**Post Office Box 207**
**Wedowee, Alabama 36278**

Recording Fee    25.00
TOTAL    25.00

STATE OF ALABAMA          )
                          )          **MORTGAGE FORECLOSURE DEED**
COUNTY OF RANDOLPH        )

    **KNOW ALL MEN BY THESE PRESENTS**: That Clayton O. Bailey, did, on to-wit, the 15th day of July, 2002 execute a mortgage to Bank of Wedowee name which mortgage is recorded in Mortgage Book #432, Page #767, in the Office of the Judge of Probate of Randolph County, Alabama; and

    **WHEREAS,** default was made in the payment of the indebtedness secured by said mortgage and the said Bank of Wedowee did declare all of the indebtedness secured by said mortgage due and payable and did give due and proper notice of the foreclosure of said mortgage, in accordance with the terms thereof, by publication in the *Randolph Leader*, newspaper of general circulation published in Randolph County, Alabama, in its issues of October 22 and 29 and November 5, 2003; and

    **WHEREAS,** on the 12th of November, 2003, the day on which the foreclosure sale was due to be held under the terms of said notice, between the legal hours of sale, said foreclosure sale was duly and properly conducted, and Bank of Wedowee did offer for sale and did sell at public outcry, in front of the courthouse door of the Randolph County Courthouse in the City of Wedowee, Alabama, the property hereinafter described; to wit:

    Commence at the Southwest corner of Section 34, Township 19 South, Range 11 East in Randolph County, Alabama; thence run North 2 degrees 06 minutes East along the section line a distance of 420 feet to the point of beginning; thence continue North 2 degrees 06 minutes East along the section line a distance of 3215 feet to point on the South side of Lake Wedowee (Wedowee Creek) at the approximate 795 foot contour; thence run in a Southeasterly direction along the approximate 795 foot contour a distance of 2131.4 feet to a point on the 795 foot contour and the West right-of-way of U.S. Highway No. 431; thence run in a Southeasterly direction along the West right-of-way of U.S. Highway No. 431 a distance of 1750 feet to a point on the West ROW of said highway; thence run North 81 degrees 25 minutes West a distance of 183.2 feet to a point; thence run South 21 degrees 35 minutes West a distance of 529 feet to a point; thence run West a distance of 672.5 feet to a point; thence run South 16 degrees 36 minutes West a distance of 210 feet to a point; thence run South 88 degrees 36 minutes West a distance of 1057.4 feet to

STATE OF ALABAMA, RANDOLPH COUNTY.
I, George Diamond, Judge of Probate in and for said State and County, hereby certify under my hand and official seal of office that the within and foregoing is a true and correct copy of instrument as same appears of record in this office, recorded in _____ Record _____ 305 _____, page _____ 58 _____
Given under my hand and seal this the 11th day of, June 2006.
_____ Judge of Probate

a point; thence run North 2 degrees 06 minutes East a distance of 420 feet to a point; thence run South 88 degrees 36 minutes West a distance of 262 feet to the point of beginning. Less and except: Beginning at a monument marking Station 53+00 on West right of way line of U.S. Highway 431 Project Number F 167(9); thence South 19 degrees 11 minutes 55 seconds East along said ROW line 109.19 feet; thence North 81 degrees 25 minutes 00 seconds West 179.11 feet; thence North 81 degrees 25 minutes 00 seconds West 144.34 feet; thence North 13 degrees 42 minutes 42 seconds West 220.00 feet; thence South 81 degrees 25 minutes 00 seconds East 330.00 feet to said West ROW line; thence South 05 degrees 05 minutes 29 seconds East along said ROW line 110.07 feet to the true point of beginning. Containing 1.49 acres, more or less.

This land being and lying in the SW1/4 of SW1/4, SE1/4 of SW1/4, NW1/4 of SW1/4, NE1/4 of SW1/4 and the SW1/4 of NW1/4 all in Section 34, Township 19 South, Range 11, East in Randolph County, Alabama, and containing 125 acres, more or less.

Less and except all easements, ownership and interest of the Alabama Power Company to that portion of the above described property that lies below the 800 foot mean sea level elevation marks, Huntsville Meridian.

Less and except Unit Number M1 located in Red Hawk's Nest, a Condominium Community, located in Section 34, Township 19 South, Range 11 East in Randolph County, Alabama described and recorded in Deed Book 298 at page 390 in the Probate Office of Randolph County, Alabama.

**WHEREAS,** the highest and best bid obtained for the property described in the aforementioned mortgage was the bid of Bank of Wedowee, as transferee or mortgagee in the amount of Two Million One Hundred Thousand and 00/100 Dollars ($2,100,000.00), which sum was offered to be credited against the indebtedness secured by said mortgage, and said property was thereupon sold to the said Bank of Wedowee.; and

**WHEREAS,** Jesse S. Vogtle, Jr. conducted said sale on behalf of the said debtor and Bank of Wedowee; and

**WHEREAS,** said mortgage expressly authorized the person conducting the sale to execute to the purchaser at said sale a deed to the property so purchased;

**NOW THEREFORE,** in consideration of the premises and the credit of Two Million One Hundred Thousand and 00/100 Dollars ($2,100,000.00), Clayton O. Bailey, acting by and through Bank of Wedowee, transferee or mortgagee, by and through the said Jesse S. Vogtle, Jr., as auctioneer and the person conducting the sale on behalf of the mortgagee or transferee of said

mortgagee, does hereby grant, bargain, sell and convey unto Bank of Wedowee, the following real estate situated in Randolph County, Alabama, to-wit:

Commence at the Southwest corner of Section 34, Township 19 South, Range 11 East in Randolph County, Alabama; thence run North 2 degrees 06 minutes East along the section line a distance of 420 feet to the point of beginning; thence continue North 2 degrees 06 minutes East along the section line a distance of 3215 feet to point on the South side of Lake Wedowee (Wedowee Creek) at the approximate 795 foot contour; thence run in a Southeasterly direction along the approximate 795 foot contour a distance of 2131.4 feet to a point on the 795 foot contour and the West right-of-way of U.S. Highway No. 431; thence run in a Southeasterly direction along the West right-of-way of U.S. Highway No. 431 a distance of 1750 feet to a point on the West ROW of said highway; thence run North 81 degrees 25 minutes West a distance of 183.2 feet to a point; thence run South 21 degrees 35 minutes West a distance of 529 feet to a point; thence run West a distance of 672.5 feet to a point; thence run South 16 degrees 36 minutes West a distance of 210 feet to a point; thence run South 88 degrees 36 minutes West a distance of 1057.4 feet to a point; thence run North 2 degrees 06 minutes East a distance of 420 feet to a point; thence run South 88 degrees 36 minutes West a distance of 262 feet to the point of beginning. Less and except: Beginning at a monument marking Station 53+00 on West right of way line of U.S. Highway 431 Project Number F 167(9); thence South 19 degrees 11 minutes 55 seconds East along said ROW line 109.19 feet; thence North 81 degrees 25 minutes 00 seconds West 179.11 feet; thence North 81 degrees 25 minutes 00 seconds West 144.34 feet; thence North 13 degrees 42 minutes 42 seconds West 220.00 feet; thence South 81 degrees 25 minutes 00 seconds East 330.00 feet to said West ROW line; thence South 05 degrees 05 minutes 29 seconds East along said ROW line 110.07 feet to the true point of beginning. Containing 1.49 acres, more or less.

This land being and lying in the SW1/4 of SW1/4, SE1/4 of SW1/4, NW1/4 of SW1/4, NE1/4 of SW1/4 and the SW1/4 of NW1/4 all in Section 34, Township 19 South, Range 11, East in Randolph County, Alabama, and containing 125 acres, more or less.

Less and except all easements, ownership and interest of the Alabama Power Company to that portion of the above described property that lies below the 800 foot mean sea level elevation marks, Huntsville Meridian.

Less and except Unit Number M1 located in Red Hawk's Nest, a Condominium Community, located in Section 34, Township 19 South, Range 11 East in Randolph County, Alabama described and recorded in Deed Book 298 at page 390 in the Probate Office of Randolph County, Alabama.

**TO HAVE AND TO HOLD THE** above described property unto Bank of Wedowee, its successors and assigns forever; subject, however, to the statutory rights of redemption on the part of those entitled to redeem, and any taxes which may be due.

**IN WITNESS WHEREOF,** the said Bank of Wedowee, has caused this instrument to be executed by Jesse S. Vogtle, Jr.., as auctioneer and the person conducting said sale for the Mortgagee or Transferee of Mortgagee, and in witnessed whereof the said Jesse S. Vogtle, Jr. has executed this instrument in his capacity as such auctioneer on this the 12th day of November, 2003.

CLAYTON O. BAILEY
Mortgagor

By:    BANK OF WEDOWEE Bank of Wedowee
       Mortgagee or Transferee of the Mortgage

By: _____
    Jesse S.Vogtle, Jr., as Auctioneer and the
    person conducting said sale for the
    Mortgagee or Transferee of Mortgagee

Bank of Wedowee

By: _____
    Jesse S. Vogtle, Jr., as Auctioneer and the
    person conducting said sale for the
    Mortgagee or Transferee of Mortgagee

_____
Jesse S. Vogtle, Jr., as Auctioneer and the person
conducting said sale for the Mortgagee or
Transferee of Mortgagee

673550.1                    4

STATE OF ALABAMA        )
COUNTY OF RANDOLPH      )

    I, the undersigned, Notary Public in and for said County in said State, hereby certify that JESSE S. VOGTLE, JR., whose name as Auctioneer and the person conducting said sale for the Mortgagee and Transferee of Mortgagee is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in his capacity as such Auctioneer and the person conducting said sale for the Mortgagee or Transferee of Mortgagee, and with full authority, executed this instrument voluntarily on the day that bears the same date.

    Given under my hand this the _12th_ day of November, 2003.

                           _____
                           NOTARY PUBLIC
                           My Commission Expires: _10-3-07_

# TAB D

LIEN    18    416
Recorded In Above Book and Page
04/08/2005 11:11:15 AM
George Diamond
Probate Judge
Randolph County, Alabama

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA Recording Fee    33.00
                                    TOTAL           33.00

| | | |
|---|---|---|
| JOE FRANK HUTTO CONSTRUCTION COMPANY, INC. | ) | |
| | ) | |
|      PLAINTIFF | ) | |
| VS. | ) | CASE NO. CV 2003 - 113 |
| REDHAWK VENTURES, LLC, CLAYTON BAILEY, and WENDELIN WERLEY | ) | |
| | ) | |
|      DEFENDANT | ) | |

**Filed in Office**

MAR 2 9 2005

**KIM S. BENEFIELD**
Clerk of Circuit Court

ORDER

This having been the day heretofore set for trial in the above case and the Court having called the case for trial, Plaintiff and Defendants appeared represented by counsel.

The Court proceeded to take testimony over a two day period with respect to the issues now pending before this Court. The Court has been thoroughly briefed by the parties as to their respective positions concerning the law with respect to piercing the corporate veil of an Alabama Limited Liability Corporation and the Court has considered the same.

The Court is of the opinion after reviewing the case law that the corporate veil of a Limited Liability Corporation may be pierced and that the standards

generally applicable to piercing-the-corporate-veil of any other corporation in Alabama are applicable to attempts to pierce-the-corporate-veil of a Limited Liability Corporation.

The primary factors to be considered by this Court in determining whether the Plaintiff is entitled to relief are:

A.   Inadequacy of capital.

B.   Fraudulent purpose in conception or operation of the business.

C.   Operation of the corporation as an instrumentality or alter-ego.

The Court has listened to extensive testimony in this case and makes the following findings of fact:

Redhawk Ventures, LLC was duly incorporated in the State of Alabama with its principal owners being Defendants Clayton Bailey and Wendelin Werley. The Court finds that the relationship of father/daughter between Clayton Bailey and Wendelin Werley likens this unto what might be termed a closely held family corporation.

The Court finds that this corporation was formed for a legitimate purpose, that there was no fraud intended by either Wendelin Werley or Clayton Bailey with respect to the formation of the corporation.

The actions of the principals of the corporation, Wendelin Werley and Clayton Bailey, subsequent to the formation of the corporation are the Court's

2

primary consideration with respect to whether the Plaintiff has met its burden of proof in this case.

The Court specifically finds that an Operating Agreement was established to govern the rights, duties and obligations of the parties as concerns Redhawk Ventures, LLC. The Operating Agreement provided certain limitations with respect to what the manager of the corporation could and could not do and the Operating Agreement referenced the parties' obligations to be bound by the terms and conditions of the Alabama Limited Liability Corporation Act.

The Court finds that the actions of Wendelin Werley and Clayton Bailey after the formation of the LLC were such that the corporation was really the alter-ego of these individuals and but for being a corporation in form, the parties treated the corporate entity in many instances as if it were non-existent.

The Court specifically finds that the following acts of Clayton Bailey and Wendelin Werley substantiate the Court's finding that Redhawk Ventures, LLC was merely the alter-ego of these persons as individuals:

(1)    The parties disregarded the limitations and restrictions of Section 5.4 of the Operating Agreement with respect to expenditures of large amounts of money by the corporation. In particular, Wendelin Werley and her husband, Luther Werley, took approximately $99,000 of corporate money from the assets of the corporation by paying themselves $3,000 every two weeks under what they

3

deemed to be a Maintenance Contract to maintain property leased by Redhawk Ventures, LLC (hereinafter Redhawk). Such a contract required the written consent of the holder of two-thirds of the interest of the LLC and this was not obtained. Mr. Bailey, the two-thirds owner of Redhawk, was not even aware that his daughter was withdrawing these monies from the corporation or that there was any Maintenance Agreement in existence between the corporation and his daughter and her husband. The taking and use of this $99,000 was evidence of the disregard of the corporate entity and its Operating Agreement for the sole benefit of Wendelin Werley and her husband, Luther.

(2)    The Lease Agreement entered into between Clayton Bailey and Redhawk, LLC was a contractual arrangement between an individual and a corporation, the terms of which were disregarded in many aspects by the parties who, by their conduct, disregarded the Lease Agreement in favor of treating the lease and the property the subject thereof as if the same were owned and controlled by the father/daughter combination.

In particular, a prime example of this centers around payments made to Clayton Bailey by Redhawk which Wendelin Werley deems to have been pursuant to the terms of the Lease Agreement.

The Court finds that the only way Clayton Bailey could have been paid rent under the terms of the lease would have been from the profits of Redhawk. The

4

Court finds that there is no evidence before the Court that Redhawk ever had any profits. Moreover, from the evidence before this Court Clayton Bailey would never have been entitled to be paid any sum as rental during the term of the lease. The evidence before this Court is overwhelming that Redhawk never operated at a profit and always operated at a deficit.

The Court further finds that the purported cancellation and re-entry by Clayton Bailey concerning the property was ineffective, as it was not done in accordance with the terms specifically referenced in the lease as related to re-entry, default and cancellation of the lease.

Redhawk was not afforded the opportunity to cure any default as provided pursuant to the terms of the lease and no specific grounds for finding any default were ever provided to Redhawk pursuant to the terms of the lease. The purported re-entry by Clayton Bailey was contractually ineffective as provided by the terms of the lease.

3.    Luther Werley was the manager of Redhawk. In this capacity he had an obligation to treat the assets of Redhawk as corporate assets. This Court specifically finds that Luther Werley, husband of Wendelin Werley, in violation of Ala. Code § 10-12-29 took a pontoon boat which was the property of Redhawk and appropriated the same to his own use and benefit without accounting for the monies received from the same to the corporation. This was done at a time when

5

the corporation and manager knew of its judgment obligation to Hutto Construction. This action specifically shows the treatment of corporate assets as though they were the personal property by the Werley family.

4.    The Court further finds that in disregard of the rights of potential judgment creditors a pickup truck purchased for $13,000 with corporate assets was sold to Luther Werley by Wendelin Werley for the sum of $1.00. This truck was apparently subsequently sold by Luther Werley for the sum of $2500. The Court again finds this action as treating corporate assets as though they were the personal property of Wendelin Werley.

5.    The Court finds that Redhawk paid the personal obligations of the Clayton Bailey Revocable Trust and personal bills of Luther and Wendelin Werley.

Apparently the Clayton Bailey Revocable Trust also paid certain obligations of Redhawk. The interchange of monies and payment of bills between these family members clearly evidences a disregard of the corporate status and treatment of corporate assets as though they were personal property.

6.    The records reflecting profits and losses of Redhawk and the balance sheets prepared at the direction of the Wendelin Werley were in many instances inconsistent with the tax returns filed by Redhawk as concerns the expenses allegedly incurred by Redhawk paid with Redhawk assets.

8

The inconsistencies between the tax returns and the records kept by the company cannot be ignored in determining whether this corporation was treated as a corporate entity or as the alter-ego of the defendants.

7.    Neither Clayton Bailey nor Wendelin Werley contributed any money to the capital account of this corporation. The Court finds the corporation to be totally and wholly inadequately capitalized.

Based upon the foregoing findings of fact the Court finds that Redhawk Ventures, LLC was operated as an instrumentality or alter-ego of Wendelin Werley and Clayton Bailey and that the business was operated as concerns judgment creditors in a fraudulent manner in some aspects.

The Court finds that the corporate veil of this corporation should be pierced and that liability for the Judgment of Hutto Construction Company, Inc. against Redhawk Ventures, LLC should be imposed on Clayton Bailey and Wendelin Werley, individually, as well as Redhawk Ventures, LLC.

Based upon the foregoing findings of fact is hereby

*ORDERED, ADJUDGED AND DECREED* by the Court as follows:

1.    Judgment is entered in favor of Plaintiff Hutto Construction Company, Inc. against Defendants Wendelin Werley and Clayton Bailey, individually, for all sums due on the Judgment entered against Redhawk Ventures, LLC in favor of Hutto Construction dated December 12, 2002.

7

2.    Defendants Redhawk Ventures, LLC, Wendelin Wexley, and Clayton Bailey shall be given credit for items taken by Hutto Construction Company, Inc. at the time they left the job as reflected by the exhibits in this case toward the judgment due.

3.    Costs of court are taxed against Defendants as part of the judgment.

DONE and ORDERED this 25 day of March, 2005.

Tom Young

ROBERT CAMPBELL
JOHN TINNEY
WILLIAM R MYERS

8

TAB E

*Filed in Mtg Book 493 Page 793*

STATE OF ALABAMA

COUNTY OF RANDOLPH

§
§
§

DEED      321      2
Recorded In Above Book and Page
03/10/2006 01:45:54 PM
George Diamond
Probate Judge
Randolph County, Alabama

**CORPORATE STATUTORY
WARRANTY DEED**

Recording Fee      18.00
TOTAL              18.00

**KNOW ALL MEN BY THESE PRESENTS**, that in consideration of Ten and No/100 ($10.00) Dollars and other good and valuable consideration, to the undersigned Bank of Wedowee, an Alabama Banking Corporation, herein referred to as GRANTOR, by Buffalo Holdings, LLC, a Georgia Limited Liability Company, herein referred to as GRANTEE, the receipt and sufficiency whereof is hereby acknowledged, GRANTOR does grant, bargain, sell and convey unto GRANTEE the following described real estate situated in Randolph County, Alabama to-wit:

Commence at the Southwest corner of Section 34, Township 19 South, Range 11 East in Randolph County, Alabama; thence run North 2 degrees 06 minutes East along the section line a distance of 420 feet to the point of beginning; thence continue North 2 degrees 06 minutes East along the section line a distance of 3215 feet to point on the South side of Lake Wedowee (Wedowee Creek) at the approximate 795 foot contour; thence run a distance of 2131.4 feet to a point on the 795 foot contour and the West right-of-way of U.S. Highway No. 431; thence a distance of 1750 feet to a point on the West ROW of said highway; thence run 81 degrees 25 minutes West a distance of 183.2 feet to a point; thence run South 21 degrees 35 minutes West a distance of 521 feet to a point; thence run West a distance of 672.5 feet to a point; thence run South 16 degrees 36 minutes West a distance of 210 feet to a point; thence run South 88 degrees 36 minutes West a distance of 1057.4 feet to a point; thence run North 2 degrees 06 minutes East a distance of 420 feet to a point; thence run South 88 degrees 36 minutes West a distance of 262 feet to the point of beginning.

Less and except the following:

1. Beginning at a monument marking Station 53+00 on West right of way line of U.S. Highway 431 Project Number F 167(9); thence South 19 degrees 11 minutes 55 seconds East along said ROW line 109.19 feet; thence North 81 degrees 25 minutes 00 seconds West 179.11 feet; thence North 81 degrees 25 minutes 00 seconds West 144.34 feet; thence North 13 degrees 42 minutes 42 seconds West 220.00 feet; thence South 81 degrees 25 minutes 00 seconds East 330.00 feet to said West ROW line; thence South 05 degrees 05 minutes 29 seconds East along said ROW line 110.07 feet to the true point of beginning. Containing 1.49 acres, more or less.

2. All easements, ownership and interest of the Alabama Power Company to that portion of the above described property that lies below the 800 foot mean sea level elevation marks, Huntsville, Meridian.

I, George Diamond, _____ hereby certify under my hand and official seal of office that the within and foregoing is a true and correct copy of instrument as same appears of record in this office, recorded ___321___, page ___2___

Given under my hand and seal this the 16th June, 2006

_George Diamond_ Judge of Probate

This land being and lying in the SW1/4 of SW1/4, SE1/4 of SW1/4, NW1/4 of SW1/4, NE1/4 of SW1/4 and the SW1/4 of NW1/4 of all in Section 34, Township 19 South, Range 11 East in Randolph County, Alabama, and containing approximately 125 acres less those parcels excluded above.

Together with all and singular the tenements, hereditaments, and appurtenances, thereto or in any wise appertaining and the reversion or the reversions, remainder or remainders, rents, issues, and profits thereof; and also all the estate, right, title, interest, dower and the right of dower, property, possession, claim and demand whatsoever, as well in law as in equity of the said Grantor, of, in, and to the same and every part or parcel thereof, with the appurtenances.

This conveyance is subject to outstanding ad valorem taxes, statutory rights of redemption, restrictive covenants, rights of way, easement and reservations of record that apply to the hereinabove described real property.

**TO HAVE AND TO HOLD**, all and singular, the above mentioned and described premises, together with the appurtenances, unto the said GRANTEE, its successors and assigns forever. GRANTOR does covenant with the said GRANTEE that it has not in any way encumbered or otherwise placed any lien upon the premises during its ownership thereof.

**IN WITNESS WHEREOF**, GRANTOR has hereunto set its hand and seal by its duly authorized officer on this 10th day of March, 2006.

**BANK OF WEDOWEE**

By: _Roger E. Campbell_____
Roger E. Campbell
Its President and CEO

STATE OF ALABAMA          §
                                          §
COUNTY OF RANDOLPH   §

I, the undersigned, a Notary Public in and for said County and State, hereby certify Roger E. Campbell, whose name as President and CEO of Bank of Wedowee, an Alabama Banking Corporation, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he did execute the same voluntarily for and as the act of said corporation on the day the same bears date.

Given under my hand and official seal this the 10th day of March, 2006.


Notary Public
My Commission Expires:_9-19-09_____

**THIS INSTRUMENT PREPARED BY:**
Robert P. Reynolds, Esq.
REYNOLDS, REYNOLDS & DUNCAN, LLC
Attorneys at Law
Post Office Box 2863
Tuscaloosa, Alabama 35403
(205) 391-0073
File No. 63.0003

NO TITLE EXAMINATION WAS PERFORMED AND NO TITLE OPINION IS RENDERED BY
THE PREPARER OF THIS INSTRUMENT.

BOWRCStatDeed.63.0003.wpd