IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| HUTTO CONSTRUCTION, INC. | ) | |
| PLAINTIFF | ) | |
| VS. | ) | CASE NO. 3:06-CV-404-T |
| BUFFALO HOLDINGS, LLC | ) | |
| DEFENDANT | ) | |

### PLAINTIFF'S EVIDENTIARY SUBMISSION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Comes now Plaintiff and submits to the Court the following exhibits in opposition to Defendants' Motion for Summary Judgment:

Exhibit 1:    Contract dated April 10, 2002, entered into between Hutto Construction and Red Hawk.

Exhibit 2:    March 29, 2005 Judgment against Clayton Bailey.

Exhibit 3:    Affidavit of Rodney Walker.

Exhibit 4:    Judgment against Red Hawk for $313,500.34 dated December 12, 2002, and recorded December 12, 2002, in Judgment Book 17, Page 291.

Exhibit 5:    Bank of Wedowee's Complaint to Quiet Title.

Exhibit 6:    Contract of Sale between Bank of Wedowee and Buffalo Holdings dated December 20, 2005.

Exhibit 7:    Exhibit AA attached to Contract referenced in Exhibit 6 above.

Exhibit 8:    Non-Recourse Assignment of Notes and Mortgages document.

Exhibit 9:    Statutory Notice of Lien filed by Hutto on March 24, 2003.

/s/ John A. Tinney
John A. Tinney        TIN005
Attorney for Plaintiff Hutto
Post Office Box 1430
739 Main Street
Roanoke, Alabama  36274
(334) 863-8945

CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

GUY V. MARTIN
Attorney for Defendant

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: (NONE)

Respectfully submitted,

s/ John A. Tinney
John A. Tinney
Attorney for Plaintiff
Post Office Box 1430
739 Main Street
Roanoke, Alabama 36274
Phone: (334) 863-8945
Fax: (334) 863-7114
TIN005

# EXHIBIT
# 1

# Hutto Construction Company, Inc.



P.O. Box 1053 ♦ 513 - B East Battle Street ♦ Talladega, Alabama 35161
Phone 256-761-1925 ♦ Fax 256-761-1258

## CONTRACT

THIS AGREEMENT, made this __10th__ day of ___April_____, 2002, by and between ___
REDHAWK VENTURES, LLC OF WEDOWEE, ALABAMA _____,
herein called the "Owner", acting through its___OWNER_____, and Hutto Construction Company,
Inc., an Alabama Corporation, of the City of Talladega, and County of Talladega, hereinafter called the
"Contractor".

WITNESSETH: That for and in consideration of the payments and agreements hereinafter mentioned, to be made
and performed by the OWNER and the CONTRACTOR hereby agrees with the OWNER to commence and
complete the construction described as follows:

### SPECIFICATIONS ARE TO BE AS FOLLOWS:

### ALL IN ACCORDANCE WITH THE PLANS AND SPECS WHICH HAVE BEEN COMPLETED
### BY JOSEPH RUSCIN OF DESIGN PLUS OF AUBURN, AL DATED MARCH 15,2002.

The above listed work shall hereinafter be called the project, for the sum of _____ COST PLUS 15% ON
ANY CONSTRUCTION WORK AT THE REDHAWK VENTURES TOWNHOMES SITE AND WORK
PERTAINING THERETO ____) and all extra work in connection therewith, under the terms as stated in the
General And Special Conditions of the Contract; and at their own proper cost and expense to furnish all the
materials, supplies, machinery, equipment, tools, supervision, labor, insurance, and other accessories and services
necessary to complete the said project in accordance with the conditions and prices stated in the proposal and the
General Conditions of the Contract, the Plans, which include all maps, plats, blueprints, and other drawings and
printed matter, and the specifications as provided by the CONTRACTOR AND OWNER, all of which are made a
part hereof and collectively evidence and constitute the contract.

The Owner agrees to pay the Contractor in current funds for the performance of the contract, **subject to additions
or deductions**, by the 10th of the preceding month when work is completed. All requests for payment must be
submitted to the Owner no later than the 31ST of the month which work is completed. In such case as payment is
not made on time, then the Contractor is entitled to an interest at the maximum prevailing rate at the time of such
payment is due on the unpaid balance of such bill. Upon completion of the work, a walk-thru and punch list must
be done before the owner can take possession of the building. The owner will be allowed to move into the building
while such punch list items are being completed as long as all payments have been made and the work is paid for
in full bearing the owner shall be entitled to withhold from such monies an amount to cover punch list items which
according to Alabama State Law can be no more than two (2) times the cost of repairing such items. Only one
punch list and walk-thru will take place. Any additional items will be observed as damage caused as the owner
moves into the building and shall not be repaired by Hutto Construction Co., Inc.

The Contractor agrees that they will furnish the Owner with lien releases signed by the Contractor and any Subcontractors which may work on the project. The contractor shall be allowed to hold a lien on the building and property signed in advance until all work is complete and paid for as agreed in current funds.

The Contractor agrees to warranty all materials and workmanship on this project for a period of One year from the date of completion. The Contractor further agrees to carry all workers compensation insurance and general liability insurance and to have the Owner listed as an additional insured. Owner agrees that in the case which the building may be damaged by fire, windstorm, tornado, or other acts of God, or acts of vandilism that Hutto Construction Co., Inc. shall be paid for the amount of work in place at such time of damage..

This contract shall represent all agreements of both parties.

IN WITNESS WHEREOF, the parties to these presents have executed this contract in _____2_____ counterparts, each of which shall be deemed an original, in the year and day first above mentioned.

REDHAWK VENTURES, LLC

Date

ATTEST:

____Hutto Construction Co., Inc.____
Contractor
By: _____

Title: ____Vice-President____

Address: ____P.O. Box 1053____

____Talladega, AL 35161____

Alabama License Number: ____18837____

EXHIBIT
2

15482

Recorded In Above Book and Page
04/08/2005 11:11:15 AM
George Diamond
Probate Judge
Randolph County, Alabama

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA Recording Fee          33.00
                                        TOTAL             33.00

JOE FRANK HUTTO             )
CONSTRUCTION COMPANY,
INC.                        )

        PLAINTIFF           )

VS.                         )          CASE NO. CV 2003 - 113

REDHAWK VENTURES, LLC,      )
CLAYTON BAILEY, and                         **Filed in Office**
WENDELIN WERLEY             )

        DEFENDANT           )                MAR 2 9 2005

                                        **KIM S. BENEFIELD**
                                        Clerk of Circuit Court

## ORDER

This having been the day heretofore set for trial in the above case and the Court having called the case for trial, Plaintiff and Defendants appeared represented by counsel.

The Court proceeded to take testimony over a two day period with respect to the issues now pending before this Court. The Court has been thoroughly briefed by the parties as to their respective positions concerning the law with respect to piercing the corporate veil of an Alabama Limited Liability Corporation and the Court has considered the same.

The Court is of the opinion after reviewing the case law that the corporate veil of a Limited Liability Corporation may be pierced and that the standards

generally applicable to piercing-the-corporate-veil of any other corporation in Alabama are applicable to attempts to pierce-the-corporate-veil of a Limited Liability Corporation.

The primary factors to be considered by this Court in determining whether the Plaintiff is entitled to relief are:

    A.    Inadequacy of capital.

    B.    Fraudulent purpose in conception or operation of the business.

    C.    Operation of the corporation as an instrumentality or alter-ego.

The Court has listened to extensive testimony in this case and makes the following findings of fact:

Redhawk Ventures, LLC was duly incorporated in the State of Alabama with its principal owners being Defendants Clayton Bailey and Wendelin Werley. The Court finds that the relationship of father/daughter between Clayton Bailey and Wendelin Werley likens this unto what might be termed a closely held family corporation.

The Court finds that this corporation was formed for a legitimate purpose, that there was no fraud intended by either Wendelin Werley or Clayton Bailey with respect to the formation of the corporation.

The actions of the principals of the corporation, Wendelin Werley and Clayton Bailey, subsequent to the formation of the corporation are the Court's

2

primary consideration with respect to whether the Plaintiff has met its burden of proof in this case.

The Court specifically finds that an Operating Agreement was established to govern the rights, duties and obligations of the parties as concerns Redhawk Ventures, LLC. The Operating Agreement provided certain limitations with respect to what the manager of the corporation could and could not do and the Operating Agreement referenced the parties' obligations to be bound by the terms and conditions of the Alabama Limited Liability Corporation Act.

The Court finds that the actions of Wendelin Werley and Clayton Bailey after the formation of the LLC were such that the corporation was really the alter-ego of these individuals and but for being a corporation in form, the parties treated the corporate entity in many instances as if it were non-existent.

The Court specifically finds that the following acts of Clayton Bailey and Wendelin Werley substantiate the Court's finding that Redhawk Ventures, LLC was merely the alter-ego of these persons as individuals:

(1)    The parties disregarded the limitations and restrictions of Section 5.4 of the Operating Agreement with respect to expenditures of large amounts of money by the corporation. In particular, Wendelin Werley and her husband, Luther Werley, took approximately $99,000 of corporate money from the assets of the corporation by paying themselves $3,000 every two weeks under what they

3

deemed to be a Maintenance Contract to maintain property leased by Redhawk Ventures, LLC (hereinafter Redhawk). Such a contract required the written consent of the holder of two-thirds of the interest of the LLC and this was not obtained. Mr. Bailey, the two-thirds owner of Redhawk, was not even aware that his daughter was withdrawing these monies from the corporation or that there was any Maintenance Agreement in existence between the corporation and his daughter and her husband. The taking and use of this $99,000 was evidence of the disregard of the corporate entity and its Operating Agreement for the sole benefit of Wendelin Werley and her husband, Luther.

(2)    The Lease Agreement entered into between Clayton Bailey and Redhawk, LLC was a contractual arrangement between an individual and a corporation, the terms of which were disregarded in many aspects by the parties who, by their conduct, disregarded the Lease Agreement in favor of treating the lease and the property the subject thereof as if the same were owned and controlled by the father/daughter combination.

In particular, a prime example of this centers around payments made to Clayton Bailey by Redhawk which Wendelin Werley deems to have been pursuant to the terms of the Lease Agreement.

The Court finds that the only way Clayton Bailey could have been paid rent under the terms of the lease would have been from the profits of Redhawk. The

4

Court finds that there is no evidence before the Court that Redhawk ever had any profits. Moreover, from the evidence before this Court Clayton Bailey would never have been entitled to be paid any sum as rental during the term of the lease. The evidence before this Court is overwhelming that Redhawk never operated at a profit and always operated at a deficit.

The Court further finds that the purported cancellation and re-entry by Clayton Bailey concerning the property was ineffective, as it was not done in accordance with the terms specifically referenced in the lease as related to re-entry, default and cancellation of the lease.

Redhawk was not afforded the opportunity to cure any default as provided pursuant to the terms of the lease and no specific grounds for finding any default were ever provided to Redhawk pursuant to the terms of the lease. The purported re-entry by Clayton Bailey was contractually ineffective as provided by the terms of the lease.

3.    Luther Werley was the manager of Redhawk.    In this capacity he had an obligation to treat the assets of Redhawk as corporate assets. This Court specifically finds that Luther Werley, husband of Wendelin Werley, in violation of Ala. Code § 10-12-29 took a pontoon boat which was the property of Redhawk and appropriated the same to his own use and benefit without accounting for the monies received from the same to the corporation. This was done at a time when

5

the corporation and manager knew of its judgment obligation to Hutto Construction. This action specifically shows the treatment of corporate assets as though they were the personal property by the Werley family.

4.    The Court further finds that in disregard of the rights of potential judgment creditors a pickup truck purchased for $13,000 with corporate assets was sold to Luther Werley by Wendelin Werley for the sum of $1.00. This truck was apparently subsequently sold by Luther Werley for the sum of $2500. The Court again finds this action as treating corporate assets as though they were the personal property of Wendelin Werley.

5.    The Court finds that Redhawk paid the personal obligations of the Clayton Bailey Revocable Trust and personal bills of Luther and Wendelin Werley.

Apparently the Clayton Bailey Revocable Trust also paid certain obligations of Redhawk. The interchange of monies and payment of bills between these family members clearly evidences a disregard of the corporate status and treatment of corporate assets as though they were personal property.

6.    The records reflecting profits and losses of Redhawk and the balance sheets prepared at the direction of the Wendelin Werley were in many instances inconsistent with the tax returns filed by Redhawk as concerns the expenses allegedly incurred by Redhawk paid with Redhawk assets.

6

The inconsistencies between the tax returns and the records kept by the company cannot be ignored in determining whether this corporation was treated as a corporate entity or as the alter-ego of the defendants.

7.    Neither Clayton Bailey nor Wendelin Werley contributed any money to the capital account of this corporation. The Court finds the corporation to be totally and wholly inadequately capitalized.

Based upon the foregoing findings of fact the Court finds that Redhawk Ventures, LLC was operated as an instrumentality or alter-ego of Wendelin Werley and Clayton Bailey and that the business was operated as concerns judgment creditors in a fraudulent manner in some aspects.

The Court finds that the corporate veil of this corporation should be pierced and that liability for the Judgment of Hutto Construction Company, Inc. against Redhawk Ventures, LLC should be imposed on Clayton Bailey and Wendelin Werley, individually, as well as Redhawk Ventures, LLC.

Based upon the foregoing findings of fact is hereby

*ORDERED, ADJUDGED AND DECREED* by the Court as follows:

1.    Judgment is entered in favor of Plaintiff Hutto Construction Company, Inc. against Defendants Wendelin Werley and Clayton Bailey, individually, for all sums due on the Judgment entered against Redhawk Ventures, LLC in favor of Hutto Construction dated December 12, 2002.

2.    Defendants Redhawk Ventures, LLC, Wendelin Werley, and Clayton Bailey shall be given credit for items taken by Hutto Construction Company, Inc. at the time they left the job as reflected by the exhibits in this case toward the judgment due.

3.    Costs of court are taxed against Defendants as part of the judgment.

DONE and ORDERED this 25th day of March, 2005.

_____
Tom Young

ROBERT CAMPBELL
JOHN TINNEY
WILLIAM R MYERS

8

# EXHIBIT
# 3

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| HUTTO CONSTRUCTION, INC. | ) | |
| PLAINTIFF | ) | |
| VS. | ) | CASE NO. 3:06-CV-404-T |
| BUFFALO HOLDINGS, LLC | ) | |
| DEFENDANT | ) | |

## AFFIDAVIT OF RODNEY WALKER

Comes now Rodney Walker and having been duly sworn doth depose and say on oath as follows:

My name is Rodney Walker and I was an officer of Plaintiff herein in April of 2002 and continued as an officer of said company through 2005.

I was the Superintendent/Vice-President and was responsible for the construction and completion of the contract entered into between the Plaintiff and Red Hawk. I also had many dealings and discussions with Clayton Bailey, owner of Red Hawk, who was ultimately found to be liable for the contractual relationship between Hutto and Red Hawk.

At the time that construction began on the property in question monies were being paid to Plaintiff herein sporadically by Mr. Bailey and Red Hawk

before the mortgage was entered into with the Bank of Wedowee. Mr. Bailey informed me that he was going to enter into a mortgage with the Bank of Wedowee in August of 2002 and he brought officers of the Bank of Wedowee to look at the same.

I walked around the property with Kerry White, an officer of the Bank of Wedowee, and Bob Folsom, President of the Bank of Wedowee, between April 10, 2002, and August 29, 2002, and showed them the work that had been done on the property to that point in time. We were constructing roads, had completed one four unit condominium, and had begun construction of a second four-unit condominium complex as of the time the mortgage was entered into between the Bank of Wedowee and Clayton Bailey. Mr. Bob Folsom, President of the Bank of Wedowee, and Kerry White, had the opportunity to view all the improvements and it was explained to them that the Plaintiff herein was the contractor who was performing the services and supplying materials for the contract therein.

At the time the mortgage was entered into on August 29, 2002, there is no doubt that the Bank of Wedowee knew of the furnishing of the materials and labor by the Plaintiff herein.

Prior to the time that a Judgment was obtained against Red Hawk on December 12, 2002, many conversations took place between me and the

officers and agents of the Bank of Wedowee as to the financial condition of Mr. Bailey and Red Hawk. The Bank of Wedowee was continuing to furnish money for the project and all funds received by the Plaintiff after the mortgage was entered into were received to the best of Plaintiff's knowledge and recollection at the Bank of Wedowee.

The officers of the Bank of Wedowee were informed of the fact that a Judgment was obtained against Red Hawk in December and a copy of the Materialmen's Lien filed by me was delivered to the Bank of Wedowee in March of 2003. There is no question that the Bank of Wedowee and I had discussions about the Materialmen's Lien and I was always assured by the officers of the Bank of Wedowee that Hutto's Materialmen's Lien would be taken care of upon a final disposition of the property by the Bank of Wedowee.

I had numerous conversations with the Bank of Wedowee after it foreclosed on the property and was reassured on many occasions that the Materialmen's lien of Hutto would be taken care of when the property was sold.

When I learned that the property was being sold to Eddie Duffie I had conversations with him advising him of the interest of the Plaintiff and of the Plaintiff's intent to enforce the lien if the property was sold. This was apparently discussed between Defendant and the Bank of Wedowee as the

contractual documents entered into between the Bank of Wedowee and Buffalo clearly reference the interest of the Plaintiff in this property.

I did not add the Bank of Wedowee as a party to the suit I filed to establish the amount of the debt owed by Red Hawk as this was a suit to establish the amount of the debt. I subsequently filed my lien to perfect the Materialmen's lien and have now filed this suit to enforce the lien.

_____
Rodney Walker

STATE OF ALABAMA

RANDOLPH COUNTY

Before me, the undersigned authority, a Notary Public in the aforesaid County and State, personally appeared Rodney Walker, who first being duly sworn, deposes and says on oath that the statements contained in the foregoing are true and correct according to the best of his/her knowledge, information and belief.

_____
Rodney Walker

SWORN to and subscribed before me on this the 11th day of August, 2006.

_____
Notary Public

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Sept 9, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

GUY V. MARTIN
Attorney for Defendant

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: (NONE)

Respectfully submitted,

s/ John A. Tinney_____
John A. Tinney
Attorney for Plaintiff
Post Office Box 1430
739 Main Street
Roanoke, Alabama 36274
Phone: (334) 863-8945
Fax: (334) 863-7114
TIN005

# EXHIBIT
# 4

IN THE CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA

JOE FRANK HUTTO                    )
CONSTRUCTION COMPANY,
INC.                               )

            PLAINTIFF              )
                                        CASE NO. _CV 2002-183_
VS.                                )

RED HAWK VENTURES, LLC             )          Filed in Office

            DEFENDANT             )              DEC 1 2 2002

                    JUDGMENT             KIM S. BENEFIELD
                                         Clerk of Circuit Court
        The Court has before it a Complaint and Answer in connection with the

above matter. After reviewing the Complaint and Answer filed herein the Court is

of the opinion that the Plaintiff is entitled to the relief prayed for in the Complaint.

        It is therefore

        *ORDERED, ADJUDGED AND DECREED* that Plaintiff have and recover

of the defendant the sum of $313,500.34.  Judgment is hereby entered against

defendant Red Hawk Ventures, LLC in favor of the Plaintiff for the sum of

$313,500.34 plus cost of these proceedings.

        DONE and ORDERED this 12th day of December, 2002.

                                  _____
                                  Judge

EXHIBIT
5

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| BANK OF WEDOWEE | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § CIVIL ACTION NO. 2005- _037_ |
| | § |
| 126.49 acres, more or less, located | § |
| on Highway 431 North of Wedowee, | § |
| as further described in this complaint; | § |
| CLAYTON BAILEY; | § |
| REDHAWK VENTURES, LLC; | § |
| DARLENE COUCH; | § |
| PAUL H. ROBINSON, JR; | § |
| JERRY TOLBERT; | § |
| REDHAWK'S NEST, A | § |
| CONDOMINIUM COMMUNITY; | § |
| AND ANY ADDITIONAL PARTIES | § |
| A, B, AND C BEING THOSE | § |
| INDIVIDUALS WHOSE NAMES ARE | § |
| PRESENTLY UNKNOWN, BUT WILL BE | § |
| ADDEDBY APPROPRIATE | § |
| AMENDMENT WHEN ASCERTAINED; | § |
| and all other persons claiming any, | § |
| present, future, contingent, remainder, | § |
| reversion, or other interest in said lands, | § |
| | § |
| Defendants. | § |

Filed in Office

FEB 15 2005

KIM S. BENEFIELD
Clerk of Circuit Court

## <u>VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT</u>

1.    Plaintiff, Bank of Wedowee (hereinafter "Bank") is an Alabama banking

corporation doing business in Randolph County, Alabama.

2.    Defendant, Clayton Bailey (hereinafter "Bailey") is an individual residing at

260 Geneva Drive, East Aurora, New York, 14052, who has done business in Randolph County,

Alabama.

3.    Defendant, RedHawk Ventures, LLC, (hereinafter "RedHawk")is an Alabama

1

limited liability corporation which has done business in Randolph County, Alabama. The registered

agent of said Defendant for service of process is Wendelin Werley, Post Office Box 309, Wedowee,

Alabama 36278.

    4.    Defendant Darlene B. Couch (hereinafter "Couch") is an individual residing at 6738

Mason Creek Road, Douglasville, Georgia, 30135, who is the owner of the following real property

located in Randolph County, Alabama, to-wit:

> Commence at the Southwest corner of Section 34, Township
> 19 South, Range 11 East in Randolph County, Alabama; thence run
> east 816.73 feet; thence run North 2444.10 feet to a hole in a concrete
> driveway and the point of beginning. FROM SAID POINT OF
> BEGINNING, thence run North 69 degrees 16 minutes 45 seconds
> West, 23.47 feet; thence run North 20 degrees 46 minutes 47 seconds
> East, 102.99 feet; thence run South 69 degrees 29 minutes 59 seconds
> East 23.47 feet to an iron pin; thence run South 20 degrees 46
> minutes 47 seconds West 103.08 feet to a hole in a concrete driveway
> and the point of beginning; containing an area of .056 acres, more or
> less.

    5.    Defendant RedHawk's Nest, A Condominium Community (hereinafter "Redhawk's

Nest"), is an Alabama condominium. The registered agent of said Defendant for service of process

is Wendelin Werley, Post Office Box 309, Wedowee, Alabama 36278.

    6.    The real property and improvements thereon owned by the Bank described in the

caption to this complaint (hereinafter "Property") is more accurately described as follows:

> Commence at the Southwest corner of Section 34, Township 19
> South, Range 11 East in Randolph County, Alabama; thence run N-
> 2"06'-E along the Section line a distance of 420 feet to the Point of
> Beginning; thence continue N-2"06'-E along the Section line a
> distance of 3215 feet to a point on the South side of Lake Wedowee
> (Wedowee Creek) at the approximate 795 foot contour; thence run in
> a Southeasterly direction along the approximate 795 foot contour a
> distance of 2131.4 feet to a point on the 79S foot contour and the
> West Right-of-Way of U.S. Highway No. 431; thence run in a
> Southeasterly direction along the West R.O.W. of U.S. Highway No.
> 431 a distance of 1750 feet to a point on the West R.O.W. of said

2

Highway; thence run B81" 25'-W a distance of 183.2 feet to a point;
thence run S-21" 35'-W a distance of 529 feet to a point; thence run
West a distance of 672.5 feet to a point; thence run S-16" 36'-W a
distance of 210 feet to a point; thence run S-88" 36'-W a distance of
1057.4 feet to a point; thence run B2" 06'-E a distance of 420 feet to a
point; thence run S-88" 36'-W a distance of 262 feet to the Point of
Beginning. 125 acres more or less of land and improvements, as
further described in this complaint, being and lying in the SW1/4 of
SW1/4, SW1/4 of SW1/4, NW1/4 of SW1/4, NE1/4 of SW1/4 and
the SW1/4 of NW1/4 all in Section 34, Township 19 South, Range 11
East in Randolph County, Alabama and containing 125 acres, more or
less. Less and except all easements, ownership and interests of the
Alabama Power Company to that portion of the above-described
property that lies below the 800-foot mean sea level elevation mark,
Huntsville Meridian.

*LESS AND EXCEPT*: Beginning at a monument marking Station
53+00 on West Right of Way line of U.S. Highway 431 Project
Number F 167 (9); thence South 19 degrees 11 minutes 55 seconds
East along said R.O.W. line 109.19 feet; thence North 81 degrees 25
minutes 00 seconds West 179.11 feet; thence North 81 degrees 25
minutes 00 seconds West 144.34 feet; thence North 13 degrees 42
minutes 42 seconds West 220.00 feet; thence South 81 degrees 25
minutes 00 seconds East 330.00 feet to said West R.O.W. line; thence
South 05 degrees 05 minutes 29 seconds East along said R.O.W. line
110.07 feet to the true point of beginning. Containing 1.49 acres,
more or less.

*LESS AND EXCEPT*. Commence at the Southwest corner of Section
34, Township 19 South, Range 11 East in Randolph County,
Alabama; thence run east 816.73 feet; thence run North 2444.10 feet
to a hole in a concrete driveway and the point of beginning. FROM
SAID POINT OF BEGINNING, thence run North 69 degrees 16
minutes 45 seconds West, 23.47 feet; thence run North 20 degrees 46
minutes 47 seconds East, 102.99 feet; thence run South 69 degrees 29
minutes 59 seconds East 23.47 feet to an iron pin; thence run South
20 degrees 46 minutes 47 seconds West 103.08 feet to a hole in a
concrete driveway and the point of beginning; containing an area of
.056 acres, more or less.

3

7.      Prior to February 20, 2001 Bailey acquired the Property.

8.      On or about February 20, 2001, Bailey entered into a Lease Agreement (hereinafter "Lease") with RedHawk in which RedHawk leased the Property. This leasehold possessory interest, although terminated by Bailey by notice dated August 28, 2003, would otherwise expire on December 31, 2007 The Lease was never recorded; however, a copy of the Lease is attached to an affidavit filed on November 9, 2004 at Book 311, Page 502 in the Probate Office of Randolph County, Alabama, by Philip E. Johns, an attorney who, upon information and belief was acting on behalf of Defendant Darlene Couch. A true and correct copy of the said affidavit with Lease is attached hereto and incorporated herein by reference as Exhibit "1". A true and correct copy of the termination notice from Bailey to RedHawk is attached hereto and incorporated herein by reference as Exhibit "2".

9.      On or about May 31, 2001, Bailey executed a promissory note in favor of the Bank (hereinafter "May 2001 Note") in the amount of $629,232.22. A true and correct copy of the May 2001 Note is attached hereto and incorporated herein by reference as Exhibit "3". In order to secure the May 2001 Note, Bailey granted to Bank a first mortgage (hereinafter "First Mortgage") on the

4

Property. A true and correct copy of the First Mortgage is attached hereto and incorporated herein by

reference as Exhibit "4".

10.    On or about April 11, 2002, Bailey executed a renewal note as to the May 2001

Promissory Note in the amount of $600,686.13 (hereinafter "April 11, 2002 Renewal Note"). A true

and correct copy of the April 11, 2002 Renewal Note is attached hereto and incorporated herein by

reference as Exhibit "5". The April 11, 2002 Renewal Note was secured by the First Mortgage.

11.    On or about May 6, 2003, Bailey, by and through Wendelin Werley as his Attorney in

Fact, executed a renewal note as to the April 11, 2002 Renewal Note in favor of the Bank in the

amount of $562,966.11 (hereinafter "May 2003 Renewal Note"). A true and correct copy of the May

2003 Renewal Note is attached hereto and incorporated herein by reference as Exhibit "6". The

May 2003 Renewal Note remains unpaid and is the subject matter of a pending lawsuit filed by Bank

against Bailey in Erie County, New York, Case Number 2004-4266.

12.    On or about October 3, 2001, RedHawk obtained a loan from the Bank in the amount

of $608,541.50 and executed a note in favor of the Bank evidencing the same (hereinafter "October

2001 RedHawk Note"). A true and correct copy of the October 2001 RedHawk Note is attached

hereto and incorporated herein by reference as Exhibit "7". As an inducement to the Bank to make

this loan, Bailey and Wendelin Werley granted an additional mortgage (hereinafter "Second

Mortgage") on the Property. A true and correct copy of the Second Mortgage is attached hereto and

incorporated herein by reference as Exhibit "8".

13.    On or about April 10, 2002, Bailey and RedHawk executed a renewal note as to the

October 2001 RedHawk Note in the amount of $1,200,000.00.00 (hereinafter "April 10, 2002

RedHawk Renewal Note"). A true and correct copy of the April 10, 2002 RedHawk Renewal Note is

attached hereto and incorporated herein by reference as Exhibit "9". The April 10, 2002 RedHawk

Renewal Note was secured by the First and Second Mortgages.

14.    On or about July 15, 2002, Bailey and RedHawk executed a renewal of the April 10,

2002 RedHawk Renewal Note in the amount of $1,972,336.71 (hereinafter "July 2002 Final Note").

A true and correct copy of the July 2002 Final Note is attached hereto and incorporated herein by

reference as Exhibit "10". The July 2002 Final Note was secured by the existing First and Second

Mortgages and an additional mortgage (hereinafter "Third Mortgage") from Bailey to the Bank on

the Property. A true and correct copy of the Third Mortgage is attached hereto and incorporated

herein by reference as Exhibit "11".

15.    On or about January 31, 2003, RedHawk executed an additional promissory note in

favor of the Bank in the amount of $50,115.30 (hereinafter "January 2003 Note"). A true and

correct copy of the January 2003 Note is attached hereto and incorporated herein by reference as

Exhibit "12". The January 2003 Note was secured by the existing First, Second and Third

Mortgages, as well as an additional mortgage (hereinafter "Fourth Mortgage") of the same date

executed by Bailey and Wendelin Werley upon the Property. A true and correct copy of the Fourth

Mortgage is attached hereto and incorporated herein by reference as Exhibit "13". The January 2003

Note remains outstanding and is subject to the personal Guaranties of Bailey and Wendelin Werley.

16.    On or about February 19, 2002, Wedowee Realty, Inc., by and through its President,

Gail Amason, executed a real estate purchase offer and reservation (hereinafter "Offer"). Under the

terms of the Offer, Wedowee Realty, Inc. acquired an option to purchase one unit of the subsequently

named RedHawk's Nest. This Offer was accepted by RedHawk. A true and correct copy of the Offer

is attached hereto and incorporated herein by reference as Exhibit "14".

17.    On or about August 2, 2002, RedHawk executed a Declaration of Condominium for

7

RedHawk's Nest, (hereinafter "Declaration") as to only to only 38.699 acres of the Property under the Lease. The Declaration designates this 38.699 acre parcel of property as Redhawk's Nest, (hereinafter the "RedHawk Property") and describes the restrictions and special declarant rights available to RedHawk and future owners of the proposed condominium. A true and correct copy of the Declaration is attached hereto and incorporated herein by reference as Exhibit "15".

18.    Attached to the Declaration is a document entitled consent of lessor (hereinafter "Consent"), in which Bailey, as Trustee of the Clayton Bailey Revocable Trust (hereinafter "Trust"), as the alleged lessor of the Property purports to consent to the Declaration. However, the Trust is not, nor has it ever been, the owner of the Property and was not the lessor of the Property who could consent to the Declaration. A true and correct copy of the Consent is attached hereto and incorporated herein by reference as Exhibit "16".

19.    The Declaration also created the RedHawk's Nest Homeowners Association, Inc. (hereinafter "Association"). A true and correct copy of the Articles of Incorporation of the Association are attached hereto and incorporated herein by reference as Exhibit "17".

20.    On September 23, 2002, RedHawk delivered a Deed to Gail Amason, which describes

8

the property purchased only as the improperly designated Redhawk's Nest Unit M-1 (hereinafter the

"Amason/ Couch Property"). A true and correct copy of this deed is attached as Exhibit "18".

Located upon the Amason/Couch Property is a townhome which shares a party wall with an adjacent

townhome owned by Bank and located upon this Property. On September 20, 2002, Gail Amason

executed a mortgage (hereinafter "Amason Mortgage") to secure a loan from the Bank upon the

Amason/ Couch Property, which was subsequently recorded on September 30, 2002. A true and

correct copy of the Amason Mortgage is attached hereto and incorporated herein by reference as

Exhibit "19".

21.    On September 23, 2002, the Bank executed a partial release from the First, Second,

Third, and Fourth Mortgages upon the Property as to the Amason/ Couch Property (hereinafter

"Mortgage Release"). A true and correct copy of the Mortgage Release is attached hereto and

incorporated herein by reference as Exhibit "20".

22.    On November 12, 2003, the Bank, in accordance with applicable law, foreclosed its

Third Mortgage on the Property, including the Redhawk Property, with the exception of the

Amason/ Couch Property. A true and correct copy of the foreclosure deed is attached hereto and

9

incorporated herein by reference as Exhibit "21".

  23.  On November 10, 2004, the Bank executed a Quitclaim Deed in favor of Gail

Amason, which contained a metes and bounds description of the Amason/ Couch Property

(hereinafter "Quitclaim Deed"). A true and correct copy of the Quitclaim Deed is attached hereto and

incorporated herein by reference as Exhibit "22".

  24.  On or about November 10, 2004, Amason sold the Amason/Couch

Property to Darlene Couch. A true and correct copy of the Amason/Couch Deed is attached hereto

and incorporated herein by reference as Exhibit "23." In order to secure a loan to purchase the

Amason/Couch Property, on November 10, 2004, Couch executed a mortgage to Paul H. Robinson,

Jr. and Jerry Tolbert . A true and correct copy of the mortgage is attached hereto and incorporated

herein by reference as Exhibit "24".

  25.  By virtue of the foreclosure sale conducted on November 12, 2003, the Bank owns all

right, title, and interest in the Property subject to a non-exclusive access easement to Highway 431

from the Amason/ Couch Property upon an existing private road located upon the Property.

  26.  The Declaration placed the liability for completion of the common areas and

10

roadways upon the declarant, RedHawk, as a special declarant right. RedHawk was liable for the

development of these amenities prior to the foreclosure. However, Upon the conducting of the

foreclosure sale, the special declarant rights were terminated, as was the period of control of the

declarant, RedHawk. Bank never requested a transfer of the special declarant rights as provided in

Alabama Code Section 35-8A-304 from RedHawk in the foreclosure deed or in any other instrument

at anytime. Pursuant to Alabama Code Section 35-8A-304(d) upon foreclosure, all special declarant

rights and duties to complete or improve the RedHawk Property ceased to exist at the time of

foreclosure, as did any period of control by RedHawk. Bank has no duty or liability as to any

improvements or development of the RedHawk Property.

WHEREFORE, the Bank demands judgment as follows:

(a)    The Court should a guardian ad litem to represent all unknown defendants;

(b)    That Plaintiff, Bank, owns the Property in fee simple subject only to the First

Mortgage and Second Mortgage, Fourth Mortgage, existing ad valorem taxes, and a nonexclusive

access easement to the Amason/Couch Property;

(c)    Defendant Couch or any successor in title is the exclusive owner of the Amason/

11

Couch Property in fee simple but subject to any mortgage assumed or granted by her and existing

ad valorem taxes;

       (d)     That the sole right of Couch and any successor owner of the Amason/Couch

Property as to the Property is a nonexclusive access easement over the most direct route on the

existing private road on the Property owned by the Bank to Alabama Highway 431;

       (e)     That the Declaration of RedHawk's Nest is void;

       (f)     That the Lease has been terminated and is of no effect;

       (g)     That the Plaintiff and Couch and their successors in title have common and

statutory duties to one another as to the party wall between the Property and the Amason/Couch

Property;

       (h)     That the Court award the Plaintiff such other, further or different relief as may be

just and proper.

 

                           Roger E. Campbell, President and CEO
Of Bank of Wedowee

STATE OF ALABAMA

COUNTY OF RANDOLPH

I, the undersigned authority, a Notary Public in and for said county and said state, hereby certify that Bank of Wedowee by its President and Chief Executive Officer, Roger E. Campbell, who is known to me, acknowledged before me on this day that, being informed of the contents of this instrument, he, as such Officer and with full authority, executed the same voluntarily for and as the act of said corporation.

GIVEN under my hand and official seal, this the _15th_ day of _February_, 20 _05_.

Notary Public
My Commission Expires:  _11/23/2006_

Robert P. Reynolds
Attorney Code REY007
Attorney for Plaintiff, Bank of Wedowee

Justin B. Little
Attorney Code LIT006
Attorney for Plaintiff, Bank of Wedowee

OF COUNSEL:
REYNOLDS, REYNOLDS & DUNCAN, LLC
Post Office Box 2863
Tuscaloosa, Alabama 35403
Phone: 205-391-0073
Fax: 205-391-0911
rreynolds@rrdlaw.com
File No. 63.0001

13

# EXHIBIT
# 6

STATE OF ALABAMA                    §
                                    §        CONTRACT OF SALE
COUNTY OF RANDOLPH                  §

THIS CONTRACT OF SALE ("Contract") is made and entered into as of the 20TH

day of December, 2005, between Bank of Wedowee, an Alabama banking corporation,

("Seller"), having a mailing address of Wedowee, Alabama 35403, and Buffalo Holdings

LLC _____ and/or assigns. ("Purchaser"), having a mailing address

of 2020 Oak Grove Rd, Carrollton Ga 3117

  1. Sale Agreement; Property. Seller hereby agrees to sell to Purchaser and

Purchaser hereby agrees to purchase from Seller, on the terms stated in this Contract, that certain

real property situated in Randolph County, Alabama located on 2401 Highway 431, Wedowee,

Alabama, described in Exhibit "A" attached hereto and incorporated herein by reference,

together with the buildings and improvements not excluded in Exhibit "A", plus all other rights

and appurtenances pertaining thereto (collectively, the "Property").

  2. Purchase Price. Subject to the adjustments and prorations hereinafter described,

the price ("Purchase Price") to be paid by Purchaser to Seller for the purchase of the Property is

___See the attached Exhibit AA &___ /100 ($_____) Dollars. The

Purchase Price will be paid in the following manner:

  2.1 Non-Refundable Deposit Upon Acceptance By Seller. Concurrent with

Purchaser's execution of this Contract, Purchaser shall deposit by wire transfer the sum of Two

Hundred Thousand and no/100 Dollars ($200,000.00) ("Earnest Money") in immediately



available, current United States funds with Reynolds, Reynolds & Duncan, LLC agent for Stewart Title Guaranty Company, Inc. (the "Escrow Agent") to be held in an interest bearing account and applied to the purchase price at Closing or otherwise disposed of in accordance with this Contract. All interest earned on such deposit shall become part of the Earnest Money.

2.2    Seller shall accept or reject this Contract within ten (10) ten business days of receipt of an executed copy of the Contract and receipt the Earnest Money by the Escrow Agent.    Upon rejection of the Contract by Seller the Earnest Money shall be immediately returned to Purchaser with all accrued interest. Upon acceptance by Seller the Earnest Money shall be non-refundable.

2.3    <u>Payment at Closing.</u>    At Closing, Purchaser shall remit to Seller or the Escrow Agent the balance of the Purchase Price in immediately available U.S. funds.

3.    <u>No Purchaser Contingencies.</u>  This Contract is not subject to any contingencies except upon the event of a default by Seller. Purchaser will accept delivery of the Property in an AS IS condition without any warranty by Seller, express or implied, as to title merchantability or fitness for a particular purpose.

4.    <u>Purchaser's Access to Property.</u>    Purchaser and agents designated by Purchaser may enter the Property in order to perform all tests, appraisals and inspection as necessary in Purchasers sole opinion.  In this regard, Purchaser or the designated agents of Purchaser shall contact Seller or Seller's designated agent prior to performing such activities. All such activities

shall be at Purchaser's sole cost and expense. Whether or not the transaction described in this Contract shall close, Purchaser shall indemnify, defend and hold Seller harmless from and against all claims, actions, damages, liability, loss, costs, attorney's fees and expenses related to or arising from the activities performed by Purchaser, or at Purchaser's direction, even if such occurrence(s) were caused by the negligence of Seller, to the extent, but no further, than Seller's negligence is based upon Seller's grant of inspection and entry rights to Purchaser or Seller's failure to monitor or supervise Purchaser's, Purchaser's agents', contractors', employees' activities on the Property. If this Contract does not close, Purchaser shall, in addition to all other obligations under this contract, restore the Property to the condition existing prior to Purchaser's access to the Property, normal wear and tear excepted.

5.    Seller's Conditions Precedent to Closing.    There are no conditions precedent to Seller's obligations to sell the Property.

6.    Title.    The parties agree that title will be provided in accordance with the following:

6.1.    Title.    Within five (5) days after acceptance of this contract by Seller, Seller will provide to Purchaser a commitment from Escrow Agent for issuance of an ALTA Owner's Title Insurance Policy, in the amount of the final Purchase Price, in accordance with the pro form owners commitment and exceptions attached hereto and incorporated herein as Exhibit "B", subject to recorded plat restrictions, recorded utility easements, zoning ordinances, rights of access to the owner of excluded Parcel 3 as shown in Exhibit "A", rights of redemption and other

3

exceptions or encumbrances as set forth therein.  The termination of this Contract and return of the Earnest Money shall be Purchaser's sole remedy for Seller's failure to close this sale.  On the Closing Date (hereinafter defined), the Escrow Agent shall, at the cost of Seller, issue to Purchaser an Owner's Title Insurance Policy covering the property and containing only the exceptions shown on the pro forma title commitment.

7.    Closing.  This purchase and sale shall be consummated as follows:

7.1    Closing Date.  The purchase and sale evidenced by this Contract shall be closed (the "Closing") within twenty (20) sixty(60) days after the acceptance of this Contract by Seller (the "Closing Date"), at a time selected by Purchaser and reasonably acceptable to Seller.  The Closing shall occur at the office of Seller located at 111 West Broad Street, Wedowee, Alabama.

7.2    Transfer of Title to Property.  Title to the Property shall be conveyed to Purchaser by a Statutory Warranty Deed in the form described in Exhibit "C" attached hereto and incorporated herein by reference.

7.3    Seller's Deliveries at Closing.  At Closing, Seller shall deliver or cause to be delivered to Purchaser the following items (all required documents will be duly executed and acknowledged where required):

7.3.1    Deed.  The above-described Statutory Warranty Deed.

4

7.3.2    <u>Title Policy.</u> The above described owners title policy.

7.3.3    <u>Lien Affidavit.</u>    An affidavit in favor of the title insurance company, certifying that Seller has no unpaid bills for labor or materials furnished to the Property.

7.3.4    <u>Closing Statement.</u>    A Closing Statement in form acceptable to Seller and Purchaser.

7.3.5    <u>FIRPTA Affidavit.</u>    An affidavit made pursuant to the requirements of the Foreign Investments Real Property Tax Act (FIRPTA), 26 U.S.C. §1445, attesting that Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code of 1986, as amended and the regulations promulgated thereunder.

7.4    <u>Purchaser's Deliveries at Closing.</u>  At closing, Purchaser shall deliver or cause to be delivered to Seller the following items (all required documents will be duly executed and acknowledged where required):

7.4.1    <u>Closing Statement.</u>    A Closing Statement in form mutually acceptable to Seller and Purchaser.

7.4.2    <u>Cash Payment.</u>  The balance of the purchase price.

7.5     <u>Closing Costs.</u>  The closing costs of this transaction shall be allocated as follows:

     7.5.1  <u>Seller's Closing Costs.</u>  Seller shall pay Seller's attorneys' fees, the cost of preparing the Statutory Warranty Deed, and the cost of the owners title insurance policy in the amount of the Purchase Price.

     7.5.2   <u>Purchaser's Closing Costs.</u>   Purchaser shall pay Purchaser's attorney's fees, all recording costs for the Statutory Warranty Deed and any mortgage from Purchaser, and the costs of all inspections, surveys, investigations and reports ordered by Purchaser.

     7.6     <u>Prorations.</u>  All taxes and assessments shall be prorated as of 11:59 p.m. on the day prior to the Closing Date.

8.     <u>Possession.</u>  Seller will tender possession of the Property to Purchaser at Closing.

9.     <u>Seller's Representations and Warranties.</u>  Seller hereby represents and warrants to Purchaser the following as of the Effective Date of this Contract and as of the Closing Date, which representations and warranties shall survive the Closing.

     9.1     <u>Seller's Power and Authority.</u>   Seller has the power and authority to execute and deliver this Contract as Seller's legally binding obligation, enforceable in accordance

6



with its terms, and has (or, at Closing, will have) the power and authority to sell and convey the Property as provided in this Contract and to carry out and perform all obligations imposed on Seller hereunder, and that all requisite action necessary (1) to authorize Seller to enter into this Contract has been taken, and (2) to authorize Seller and its closing representative to carry out and perform all obligations and conditions imposed on Seller hereunder has been or, on Closing Date, will have been taken.

9.2     No Notice of Condition Correction Requirement.  Seller has not received written notice from any governmental authority, insurance company, or other agency requiring the correction of any condition with respect to the Property which has not been corrected, or alleging any violation of law relating to the Property.

9.3     No Condemnation Notice.  Seller has not received any notice of any pending or contemplated governmental taking or similar action with respect to the Property or any portion thereof.

9.4     No Other Contracts.  On the Closing Date, there will be no contracts or agreements affecting the Property or any part thereof other than this Contract and the exceptions set forth in the title insurance commitment.

9.5     Environmental Matters.  To the best of Seller's knowledge, Seller has not received any written notice from any governmental authority alleging that the Property is in violation of any "Environmental Law", meaning the Comprehensive Environmental Response,



Compensation and Liability Act of 1980, the Resource Conservation and Recovery Act of 1976 ("RCA"), the Toxic Substances Control Act, the Hazardous Materials Transportation Act, the Clean Water Act and all applicable Alabama laws and regulations, as any of such laws have been supplemented or amended to the Effective Date.

9.6     Condition of Property.     Seller makes no warranty, express or implied, as to the condition or state of the Property, or any portion thereof, or of visible or hidden defects in material, quality of construction, workmanship or capacity of the Property, or any portion thereof, or as to layout, square footage, expenses, operation, compliance with laws, rules or regulations or any other matter or things affecting or relating to the Property, and there has been no implied warranties of merchantability or fitness for a particular purpose as to the Property or any portion thereof.     Purchaser acknowledges and agrees that Purchaser is purchasing the Property AS IS and WITH ALL FAULTS except for the representations and warranties of the Seller as set forth herein.

9.7     Seller is an Alabama banking corporation, duly organized, validly existing and in good standing under the laws of the State of Alabama, and has all necessary power to execute and deliver this Agreement and perform all its obligations hereunder;

9.8.     The execution and delivery of this Agreement by Seller and the consummation of the transaction contemplated hereby will not constitute a violation of any law, regulation, ordinance, order or decree or result in the breach of any term or provision under any contract or agreement to which Seller is a party, or by which it is bound;

8



9.9    Seller has not received any notice of any actions, suits or proceedings pending against Seller or the Property relating to or affecting any portion of the Property at law or in equity or before or by any governmental authority which would, in the reasonable judgment of Seller, if determined adversely to Seller, materially adversely affect the Property with the exception of that certain action initiated by Seller in the Circuit Court of Randolph County Case Number CV 2005-037 and the assertion of Darlene Couch that excluded Parcel 3 shown in Exhibit "A" constitutes a unit of a condominium the claims of which Purchaser acknowledges have been fully disclosed by Seller.

9.10   Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code of 1986, as amended and the regulations promulgated thereunder.

10.    Brokerage.  Seller and Purchaser represent and warrant that they have not dealt with any real estate broker or agent in connection with this transaction and shall indemnify and hold each other harmless from any loss, liability, damage, cost, or expense (including, without limitation, reasonable attorneys' fees) paid or incurred by one party by reason of any other claim to any brokers, finders, or other fee in connection with this transaction by a person or entity claiming to have acted on behalf of the other party.

11.    Default: Remedies.  In the event either party to this Contract fails to perform its obligations hereunder (except as excused by the other party's default), the party claiming default will make written demand for performance by the other party.  If Seller fails to comply with such

9



a written demand within ten (10) days after receipt thereof, Purchaser may waive such default and proceed with the closing, or Purchaser may terminate this Contract and obtain a refund of the Earnest Money. If Purchaser fails to comply with such a written demand within ten (10) days after receipt thereof, Seller may waive such default and proceed with the closing, or Seller may terminate this Contract, in which case the Earnest Money shall be paid to Seller as liquidated damages, and not as a penalty, it being understood and agreed that Seller's actual damages would be difficult or impossible to ascertain, but that the Earnest Money is a reasonable approximation thereof. On termination of this Contract, each party shall pay the expenses that it has incurred. If either party to this Contract commences litigation against the other to enforce its rights hereunder, the prevailing party in such litigation shall be entitled to recover from the other its reasonable attorneys' fees and expenses incidental to such litigation.

12.    Condemnation and Casualty.

12.1    Condemnation.    In the event that either party is notified prior to Closing that any entity having powers of eminent domain is seeking or plans to seek acquisition of all or any part of the Property, the party receiving such notice shall immediately notify the other in writing, and either party shall thereupon have the right to cancel this Contract by written election delivered within ten (10) days after receiving such notification from the other party in which event the Earnest Money shall be immediately refunded and thereafter both parties shall be relieved and discharged of all further liability hereunder, except those expressly stated to survive the termination of this Agreement.



12.2    Casualty.  If, prior to the Closing Date, any portion of the Property or the buildings owned by Seller thereon shall be destroyed by fire or other casualty, then Seller shall immediately provide Purchaser with written notice of such event.  If the cost to restore the Property to substantially the same state it was in immediately prior to the occurrence of such damage or destruction as determined by an unaffiliated third party contractor retained by Seller to be equal to or less than $75,000, Seller, at its election, shall either (i) cause the Property to be restored prior to the Closing to substantially to the same state it was in prior to the damage or destruction, or (ii) reduce the Purchase Price by the amount determined by such contractor as necessary to perform such restoration. If Seller chooses to restore the property, the parties shall extend the closing date for a reasonable period of time, not to exceed sixty (60) days, to allow for such restoration.  If such restoration work is estimated by such contractor to be greater than $75,000, then Purchaser shall elect, by delivering a written notice to Seller within five (5) days of its receipt of notice from Seller that the cost to repair such damage will be greater than $75,000, to either (i) cancel this Agreement, or (ii) proceed to Closing as scheduled, and Seller shall assign to Purchaser at the Closing all of Seller's rights in the insurance claim and proceeds applicable to the damage to the Property.  If Purchaser elects to cancel this Agreement, Purchaser shall be entitled to return of the Earnest Money, and thereafter both parties shall be relieved and discharged of all further liability hereunder, except those expressly stated to survive the termination of this Agreement.


13.    Binding Effect.  This Contract shall bind and inure to the benefit of Purchaser and Seller and their respective successors and assigns.

11



14.    Survival.  This Contract shall survive the consummation of the transaction and the delivery of the Statutory Warranty Deed, and all of the terms and conditions hereof shall be and remain in full force and effect between the parties.

15.    Entire Agreement; Modification.  This Contract supersedes any and all prior discussions and agreements between Seller and Purchaser with respect to the purchase of the Property and other matters contained herein, and this Contract contains the sole and entire understanding between the parties hereto with respect to the transactions contemplated herein. This Contract shall not be modified or amended except in writing executed by Seller and Purchaser.

16.    Assignment.  Purchaser or Seller may assign this Contract without the written consent of the other party provided that the Assignor shall at all times remain liable for its obligations hereinunder.

17.    Applicable Law.  This Contract shall be governed by and construed in accordance with the laws of the State of Alabama.

18.    Time.  Time is of the essence of this Contract.

19.    Authority.  Seller and Purchaser each represent that all necessary corporate, partner, manager or member action, if any, has been duly and effectively taken in connection

12





with its execution, delivery and performance of this Contract, and that the party executing this Contract has authority to do so.

20.    Notices.    All notices herein required or permitted shall be in writing and any notice or other communication required or permitted hereunder shall be given by personal delivery, overnight delivery, or be sent by first class mail, postage prepaid, addressed to the addresses set forth on page 1 hereof. Notice shall be deemed given on the earlier of (i) actual receipt or (ii) three (3) business days after mailing.

21.    Limitation of Liability.    No advisor, trustee, director, officer, attorney, shareholder, partner, member, manager, employee, beneficiary, shareholder, participant or agent of or in Seller or Purchaser shall have any personal liability, directly or indirectly, under or in connection with this Agreement or any agreement made or entered into under or pursuant to the provisions of this Agreement, or any amendment or amendments to any of the foregoing made at any time or times, heretofore or hereafter, and Seller and Purchaser and their successors and assigns and, without limitation, all other persons and entities, shall look solely to Seller's or Purchaser's assets for the payment of any claim or for any performance, and Seller or Purchaser hereby waives any and all such personal liability. The limitations of liability provided in this Section are in addition to, and not in limitation of, any limitation on liability applicable to Seller or Purchaser provided by law or by any other contract, agreement or instrument.

13



22.    <u>Acceptance Time.</u>  The foregoing offer is made subject to acceptance in writing hereon by Seller, and in return of an executed copy by fax or email to the undersigned Purchaser within ten (10) business days of the date of this Contract as reflected in page one (1) hereof.

23.    <u>Counterpart Signatures.</u>  This agreement may be executed via facsimile in counterparts, each of which will be deemed an original document, but all of which will constitute a single document.  This document will not be binding on or constitute evidence of a contract between the parties until such time as a counterpart of this document has been executed by each party, a copy thereof delivered to the other party to this Agreement and the Earnest Money Deposit delivered to the Escrow Agent.

24.    <u>Seller's Covenants.</u>  From and after the execution of this Agreement to and including the Closing Date:

24.1    Except as otherwise provided herein, Seller shall not execute any amendment, renewal, extension, termination, surrender, or modification of any Contract, or consent, execute or approve any matter as to which Purchaser has the right to consent, execute or approve, without Purchaser's prior written consent in each instance, which shall not be unreasonably withheld or conditioned.  If Purchaser fails to respond to Seller's request for consent within five (5) days after such request, Purchaser's consent shall be deemed given.

14

24.2    Subject to Purchaser's compliance with the requirements of Section 4 Seller shall give Purchaser, its representatives, contractors and agents access to the Property for the purpose of conducting the inspections more particularly described in Section 4.

24.3    Seller shall maintain in full force and effect all policies of insurance covering the Property and shall use its best efforts, consistent with its prior practices, to maintain the Property in its condition at the time of execution of this Agreement, ordinary wear and tear excepted.

IN WITNESS WHEREOF, Purchaser and Seller have caused this Contract to be executed and delivered on the date first above written.

15

"SELLER":

BANK OF WEDOWEE

By: _____
       Roger E. Campbell
       Its President and CEO

16

FROM :                                   FAX NO. :                          Dec. 18 2004 08:28PM P3
        12/19/2005  20:05   2563574811                   CHAD LEE ATTORNEY                      PAGE  03/04

"PURCHASER":

Buffalo Holdings, LLC

By: _____

Its: GENERAL  PARTNER

17

"SELLER":

BANK OF WEDOWEE

By: *Roger E Campbell*
Roger E. Campbell
Its President and CEO

16

# EXHIBIT
# 7

## EXHIBIT AA

### Contract Addendum Providing For Price Adjustment in the Event of Removal of Exceptions 10 and 11 of Schedule B, Part II of the Title Commitment (Exhibit "B" to Contract)

If, prior to closing, Exceptions 10 and 11 of Schedule B, Part II, of the title commitment are removed so that the Bank of Wedowee is able to convey fee simple interest in all property, including the Amason/Couch property (subject to the other exceptions on the title commitment), Buffalo Holdings, LLC will pay Two Million, Eight Hundred Thousand Dollars ($2,800,000.00) for the property.

If the lawsuit referred to in the title commitment is not resolved so that the property is conveyed subject to the Amason/Couch property (and the other exceptions noted above), Buffalo Holdings, LLC will pay Two Million, Five Hundred, Twenty Thousand Dollars ($2,520,000.00) for the property.

BANK OF WEDOWEE

By: _Roger E. Campbell_

Roger E. Campbell
Its President & CEO

BUFFALO HOLDINGS, LLC

By: _____

Its General Partner

Exhibit AA.wpd

ALTA COMMITMENT TO INSURE

# SCHEDULE B-PART I

## COMMITMENT NO.:

Showing matters which will be excepted in the Policy unless the same are disposed of to the satisfaction of the Company.

1.    Defects, liens, encumbrances, adverse claims or other matter, if any, created first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2.    Ad Valorem Taxes for the year 2006, which are not due and payable until December 31, 2006.

3.    Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or any overlapping of improvements or other boundary or location disputes (can be eliminated or amended in mortgagee's policy upon proper evidence being furnished).

4.    Restrictive covenants affecting the property described in Schedule A.

5.    ~~Rights or claims of parties in possession, and not of record in the public records; liens for labor, services or material or claims to same which are not of record in said records.~~   *delete JED*

6.    Any roadway or easement, similar or dissimilar, on, under, over or across said property, or any part thereof and not of record in said records.

7.    Any titles or rights asserted by anyone, including but not limited to person, corporations, governments, or other entities, to tideland, or lands comprising the shores or bottoms of navigable rivers, lakes, bays, ocean or gulf, or lands beyond the line of the harbor or bulkhead lines as established or changed by the United States Government or riparian rights, if any.

# PART II

The following matters will be excepted in Schedule B of the policy to be issued:

*delete JED* 1.    ~~Restrictions, Reservations and Conditions, if any, as recorded in Randolph County, Alabama.~~

2.    We do not insure ownership or title to any mineral interest and the effect on the surface of the exercise of any rights included in such mineral interest.

3.    Any inaccuracy in the area, square footage, or acreage of land described in Schedule A or attached plat, if any. The Company does not insure the area, square footage, or acreage of the land.

4.    This policy takes exception to taxes and/or assessments levied subsequent to the above date, which are not yet due and payable. Taxes assessed in the amount of $7,001.88, Parcel ID/Tax ID #08-08-34-0-000-020.001 (#0, #1, #2 and #3) and Parcel ID/Tax ID #08-08-34-0-001-004.002 are due and payable October 1, 2006 but not delinquent until December 31, 2006. Also, Taxes assessed in the amount of $1,260.90, Parcel ID/ Tax ID #08-08-34-0-000-020.003are due and payable October 1, 2006 but not delinquent until December 31, 2006.

5.    Subject to that certain transmission line easement, in favor of Alabama Power Company, as recorded in Book 303, Page 472, Probate Records of Randolph County, Alabama.

6.    Subject to that certain transmission line easement, in favor of Alabama Power Company, as recorded in Book 303, Page 475, Probate Records of Randolph County, Alabama.

7.    Subject to that certain transmission line easement, in favor of Alabama Power Company, as recorded in Book 303, Page 478, Probate Records of Randolph County, Alabama.

8. All outstanding rights of redemption in favor of all persons entitled to redeem the property from that certain mortgage foreclosure sale evidenced by mortgage foreclosure deed dated August 30, 2005, and recorded on August 20, 2005, in Deed Book 317, Page 281 in the Probate Office of Randolph County, Alabama, under and in accordance with the laws of the State of Alabama or the United States of America. This firm does not attempt herein to disclose or identify the names of all persons, firms, partnerships, corporations, associations, governments, or other entities entitled to redeem the property under the laws of the State of Alabama or the United States of America. Nevertheless, rights of redemption exist, and at this time constitute a title defect, and said defect is expressly excepted from coverage under this opinion by virtue of legal obligations to list or identify all persons, firms, partnerships, corporations, associations, governments or other entities entitled to redeem the property under the laws of the State of Alabama or the United States of America and by acceptance of this policy the addressee hereby releases and discharges the firm from any such duty, obligations, or undertaking.

9. Pending disbursement of the full proceeds of the loan secured by the mortgage described is Schedule A, this Policy insures only to the extent of the amount actually disbursed, but increases as each disbursement is made in good faith and without knowledge of any defects, liens or encumbrances on the title, up to the face amount of the Policy. At the time of each disbursement of the proceeds of the loan, the title must be continued down to that time for defects, liens or encumbrances on the title intervening or recorded between Date of Policy and the date of the disbursement. Nothing contained in this paragraph limits any exception or any printed provision of this Policy.

10. Subject to that certain mortgage to be executed by Buffalo Holdings, LLC in favor of McIntosh Commercial Bank and recorded in the Probate Records of Randolph County, Alabama, to secure $2,800,000.00.

ALTA COMMITMENT TO INSURE

# SCHEDULE C

## COMMITMENT NO.:

The following requirements must be met and completed to the satisfaction of the Company before its policy of title insurance will be issued:

1.    Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest, mortgage or lien to be issued.

*Delete JED*

2.    ~~Pay all general and special taxes now due and payable.~~

3.    ~~Record instrument conveying or encumbering the estate or interest to be insured, briefly described:~~

*Delete JED*

   (a)   ~~Execution and recordation of a statutory warranty deed from Bank of Wedowee to Buffalo Holdings, LLC conveying the property described in Schedule "A" hereof.~~

   (b)   ~~Execution and recordation of a mortgage by Buffalo Holdings, LLC to McIntosh Commercial Bank in the amount of $2,800,000.00.~~

   (c)   ~~Execution and recordation of a mortgage by Buffalo Holdings, LLC to McIntosh Commercial Bank in the amount of $1,135,290.00.~~

4.    Satisfy and release of record that certain mortgage from Clayton O. Bailey to Bank of Wedowee dated June 1, 2001 and recorded June 8, 2001 in Mortgage Book 414, Page 390, Probate Records of Randolph County, Alabama, to secure $629,232.22. *Said mortgage and the indebtedness secured thereby has been transferred and assigned to Buffalo Holdings LLC and collaterally assigned to McIntosh* — *JED*

5.    Satisfy and release of record that certain mortgage from Clayton O. Bailey and Wendelin Welley to Bank of Wedowee *Comm B* dated October 3, 2001 and recorded October 5, 2001 in Mortgage Book 419, Page 450, Probate Records of Randolph County, Alabama, to secure $608,541.50. *Said mortgage and the indebtedness secured thereby has been transf. and assigned to Buffalo Holdings, LLC and collaterally assigned to McIntosh Commercial Bank* — *JED*

6.    County Taxes for the 2005 tax year are reported as unpaid by the revenue/assessment department for the jurisdiction in which said property lies. This policy takes exception to taxes and/or assessments levied subsequent to the above date, which are not yet due and payable. Taxes assessed in the amount of $1,260.90 plus penalties and interest, Parcel ID/Tax ID #08-08-34-0-000-020.003 were due and payable October 1, 2005 and delinquent after December 31, 2005. *Delete JED*

7.    ~~Furnish this Company with corporate resolution for Bank of Wedowee.~~ *Delete JED*

8.    Furnish this Company proof of qualification to conduct business in Alabama and with corporate resolution for Buffalo Holdings, LLC.

# EXHIBIT
# 8

Recorded In Above Book and Page
03/10/2006 01:48:27 PM
George Diamond
Probate Judge
Randolph County, Alabama

STATE OF ALABAMA     §
                           §
COUNTY OF RANDOLPH    §

**NONRECOURSE ASSIGNMENT OF
NOTE AND MORTGAGES**

Recording Fee        20.00
TOTAL                  20.00

For valuable and sufficient consideration paid to the undersigned Bank of Wedowee, the receipt of which is hereby acknowledged, the said Bank of Wedowee hereby assigns, transfers, grants, bargains, sells, and conveys without recourse unto Buffalo Holdings, LLC that certain Mortgage executed by Clayton O. Bailey and Wendelin S. Werley dated January 31, 2003 which said Mortgage is recorded in Mortgage Book 440, at Page 411 in the Probate Office of Randolph County, Alabama, that certain Mortgage executed by Clayton O. Bailey, Wendelin S. Werley and Redhawk Ventures, LLC dated October 3, 2001 which said Mortgage is recorded in Mortgage Book 419, at Page 450 in the Probate Office of Randolph County, Alabama, as to which the leasehold interest of Redhawk Ventures, LLC was foreclosed by virtue of that certain foreclosure deed dated August 30, 2005 and recorded in Deed Book 317, at Page 281 in the Probate Office of Randolph County, Alabama and thereafter corrected and recorded in Deed Book 319, at Page 290, and that certain Mortgage executed by Clayton O. Bailey dated June 1, 2001, which said Mortgage is recorded in Mortgage Book 414, at Page 388 in the Probate Office of Randolph County, Alabama, together with the indebtedness thereby secured and the Promissory Note evidencing such indebtedness as to which there is presently an unpaid balance of not less than $346,000.00 and all right, title and interest of the undersigned in and to the land and property conveyed by the said Mortgages. To have and to hold unto Buffalo Holdings, LLC its successor and assigns forever without recourse against Bank of Wedowee. Buffalo Holdings, LLC acknowledges that the Promissory Note hereby assigned are nonrecourse as to Clayton O. Bailey and Wendelin S. Werley and any recovery is limited to the property subject to the mortgages and all other assets of Redhawk Ventures, LLC.

**IN WITNESS WHEREOF,** the undersigned has caused this instrument to be executed on this the ___6th___ day of March, 2006

BANK OF WEDOWEE

By: _Roger E. Campbell_
Roger E. Campbell
Its President

## GENERAL ACKNOWLEDGMENT

I, the undersigned Notary Public in and for said State and County, hereby certify that Roger E. Campbell, whose name, in his capacity as President of Bank of Wedowee, an Alabama banking corporation, is signed to the foregoing nonrecourse assignment, he, as such officer and with full authority, executed the same voluntarily on the day the same bears date as the act of said corporation.

Given under my hand and seal this, the ___10th___ day of March, 2006.

Notary Public in and for State at Large

My commission expires: ___9-9-09___

This Instrument Prepared By:
Robert P. Reynolds, Esq.
REYNOLDS, REYNOLDS & DUNCAN, LLC
P.O. Box 2863
Tuscaloosa, Alabama 35403
Telephone: (205) 391-0073
File No. 63.0003

G:\Client\63 Wedowee\003RedHawk\030906 nonrecourseassingment 003.wpd

2

# EXHIBIT
# 9

LIEN

03/24/2003 12:45:39 PM
George Diamond
Probate Judge
Randolph County, Alabama

## MATERIAL AND MATERIALMAN'S LIEN

| | |
|---|---|
| Recording Fee | 12.00 |
| TOTAL | 12.00 |

**STATE OF ALABAMA**
**COUNTY OF RANDOLPH**

Before me, the undersigned Notary Public, personally appeared RODNEY WALKER, VICE-PRESIDENT OF JOE FRANK HUTTO CONSTRUCTION COMPANY, INC., an Alabama Corporation, who duly sworn says he is the LIENOR HEREIN whose address is P.O. BOX 1053, TALLADEGA, ALABAMA 35161 and that in accordance with a contract with, for, and on property belonging to CLAYTON O. BAILEY, CLAYTON O. BAILEY TRUST, WENDELIN S. WERLEY, AND / OR REDHAWK VENTURES, LLC the lienor furnished labor, services, and materials for the construction, paving, building, piping, and infrastructure on the following described real property:

PROPERTY AND IMPROVEMENTS LOCATED ON HIGHWAY 431 NORTH, WEDOWEE, ALABAMA 36278 BEING IN SECTION 34, TOWNSHIP 19 SOUTH, RANGE 11 EAST OF RANDOLPH COUNTY, ALABAMA CONTAINING 125 ACRES MORE OR LESS

OWNED BY CLAYTON O. BAILEY, CLAYTON O. BAILEY TRUST, WENDELIN S. WERLEY, AND / OR REDHAWK VENTURES, LLC.

The total amount of the labor and materials which remains to date is THREE HUNDRED, FORTY-EIGHT THOUSAND AND NO/100 DOLLARS ( $348,000.00 ) plus interest for work preformed on said property and improvements between April, 2002 and February, 2003.

Lienor
Rodney Walker, Vice-President
Joe Frank Hutto Construction Co. Inc.

On March 21, 2003 before me, Rodney Walker, personally appeared Rodney Walker, the Vice-President of Joe Frank Hutto Construction, Inc., who is personally known to me to be the person whose name is sworn and subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument thereby executes this instrument.

Witness by my hand and official seal,

Pamela R. Stephens
Notary Public

My Commission Expires
6/26/2005

My commission expires _____

DEFENDANT'S
EXHIBIT
17