IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
HUTTO CONSTRUCTION, INC.,    )
                             )
     Plaintiff,              )
                             )
     v.                      )    CIVIL ACTION NO.
                             )    3:06cv404-MHT
                             )        (WO)
BUFFALO HOLDINGS, LLC,       )
                             )
     Defendant.              )
```

OPINION

Plaintiff Hutto Construction, Inc. brings this state-law civil action to enforce a materialman's lien against real property now owned by defendant Buffalo Holdings, LLC. Removal jurisdiction is appropriate based on diversity of citizenship, 28 U.S.C. §§ 1332, 1441. The case is now before the court on Buffalo's motion for summary judgment. For the reasons that follow, the motion will be granted.

I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, at which point the burden shifts to the non-moving party to demonstrate why summary judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-

moving party and draw all reasonable inferences in favor of that party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. FACTUAL BACKGROUND

Viewed in the light most favorable to Hutto, the evidence reflects the following facts.  In 2002, Clayton Bailey was the owner of the real property in Randolph County, Alabama, that was to become the subject of this lawsuit.  The property was leased to Redhawk Ventures, LLC, a closely held corporation run by Bailey and his daughter Wendelin Werley.  On April 10, 2002, Hutto entered into a contract with Redhawk to construct a condominium development on the property.

Sometime between April 10, 2002, and August 29, 2002, Bailey informed Rodney Walker, Hutto's vice president, that he intended to mortgage the property to the Bank of Wedowee.  Walker met two officers of the bank at the property, where they walked around the property and discussed the improvements Hutto was making as general

3

contractor pursuant to its agreement with Redhawk. On August 29, 2002, Bailey mortgaged the property to the bank, and the mortgage was duly recorded in the probate office.

On December 6, 2002, Hutto initiated civil action no. 02-183 in state court, suing Redhawk for bills unpaid on the labor and materials Hutto had provided on the property during the period of September 2002 through October 2002. The Bank of Wedowee, Bailey's mortgagee, was not joined as a defendant. Redhawk, apparently lacking the assets to pay, consented to a judgment in the amount of $ 313,500.34. Said judgment was entered against Redhawk on December 12, 2002, and duly recorded.

On March 24, 2003, Hutto filed a verified statement of lien against the property, this time for labor and services provided during the period of April 2002 through February 2003 and in the amount of $ 348,000 plus interest. After recording the materialman's lien in the probate office, Hutto sent a copy to the Bank of Wedowee.

In November 2003, the bank foreclosed on the mortgage and, as the highest bidder at the foreclosure sale, took ownership of the property. The foreclosure deed was recorded on November 12, 2003. Walker orally discussed Hutto's lien with officers of the bank, who assured Walker that the lien "would be taken care of" when the property was next sold.

On August 26, 2003, Hutto filed another suit in state court, civil action no. 03-113, this time seeking the enforcement of its materialman's lien against the property. The complaint named Bailey,[*] Werley, and Redhawk as defendants. Hutto sought relief in the amount of $ 348,000 and an order directing the sheriff to sell the property for satisfaction of the judgment. On December 29, 2003, the defendants filed a motion to dismiss, asserting defects in Hutto's verified statement of lien and also asserting lack of personal jurisdiction over some

---

*The complaint also named the Clayton O. Bailey Revocable Trust.

defendants.  On February 20, 2004, the court denied the motion to dismiss.

At that point, Hutto evidently obtained new counsel, who entered his appearance and filed an "amendment to complaint" on April 23, 2004.  The amendment alleged that Redhawk was a sham corporation and that Bailey, as owner of the real property on which Hutto had made substantial improvements, had been unjustly enriched.  The amendment prayed for the following relief: "that this Court will pierce Redhawk Venture, LLC's corporate veil so that Defendant Clayton Bailey and Wendelin Werley will be personally liable for the judgment owed to Plaintiff by Redhawk Ventures, LLC.  Further, Plaintiffs demand judgment against Defendants Clayton Bailey and Wendelin Werley in the amount of $ 313,500.34 plus interests and costs."

On March 29, 2005, following a trial, the state court entered judgment in favor of Hutto on its claim for piercing Redhawk's corporate veil.  The court's final order stated that "all sums due on the Judgment entered

against Redhawk Ventures, LLC in favor of Hutto Construction dated December 12, 2002" were now judgments against Bailey and Werley individually. The defendants moved for a new trial, but their motion was denied on May 12, 2005.

The state-court record does not contain a judgment as to Hutto's initial claim for enforcement of its materialman's lien against the property. It is unclear from the record whether that claim was expressly abandoned by Hutto or was simply not ruled upon by the court. However, according to the state-court record, Hutto did not file a motion to amend or alter the judgment, nor is there any notice of appeal. What is clear is that civil action no. 03-113, which began in August 2003 with Hutto's prayer for relief in the amount of $ 348,000 and an order directing the sheriff to sell the property for satisfaction of the judgment--that is, to enforce the materialman's lien--ended with nothing more than a judgment holding Bailey and Werley personally liable for

the $ 313,500.34 judgment previously entered against Redhawk in civil action no. 02-183.

Sometime before March 10, 2006, Hutto, having learned that Buffalo was going to purchase the property from the bank, informed Buffalo of its interest in the property and its intent to enforce the lien. On March 10, 2006, the bank sold the property to Buffalo. The deed was recorded.

Hutto now sues Buffalo to enforce its lien against the property. The instant suit was commenced in state court on April 17, 2006, and removed to this court on May 4, 2006.

### III. DISCUSSION

#### A.

Materialmen's liens in Alabama are codified at 1975 Ala. Code §§ 35-11-210 to -234. A materialman's lien, also known as a mechanic's lien, is defined as "a lien on real property in favor of a person or entity furnishing labor or materials for the erection of buildings or making improvements on real property." Keith C. Kantack, A Guide

8

to Mechanics' Liens in Alabama, 61 Ala. Law. 202, 202 (2000). Under the common law, such persons had the status of general or 'unsecured' creditors. 1 Jesse P. Evans III, Alabama Property Rights and Remedies § 32.1, at 32-2 to -3 (2004). In Alabama and elsewhere, materialmen's liens were created by statute, conferring priority or 'secured' creditor status to those who contribute labor or material to improve property based on the equitable principle that a property owner should not enjoy the benefit of improvements made on his land without compensating the person who provided the labor and materials for such improvements. Lily Flagg Bldg. Supply Co. v. J.M. Medlin & Co., 232 So.2d 643, 646 (Ala. 1970); Eufaula Water Co. v. Addyston Pipe & Steel Co., 8 So. 25, 26 (Ala. 1889) ("The whole theory of the statute is to give the material-man a preferred claim on a lot of land, for the amount he has contributed in improving that particular land, or the buildings situated thereon."). Thus, "When a mechanic's lien is filed by a person or entity, the mechanic's lien creates a legal encumbrance on

the subject real property," Kantack, supra, 61 Ala. Law. at 202, which enables the creditor to enforce the debt through a forced sale of the improved land.

Because a central purpose of any lien is to preserve an interest in property and give notice to subsequent purchasers that they take the property subject to the lien, a materialman's lien remains inchoate, or unattached to the property, until "action is taken to perfect and enforce it." 1 Evans, supra, § 32.11, at 32-43; see also United States v. Costas, 142 So.2d 699, 701 (Ala. 1962) ("A materialman's or mechanic's lien ... remains inchoate and loses all force and vitality unless suit is brought and prosecuted to final judgment."). In other words, "the right to have the debt secured by the lien would be lost if there were noncompliance with the lien statutes or if the action were not brought on time." 1 Evans, supra, § 32.1, at 32-4.

Additionally, because materialmen's liens are "in derogation of the common law," the statutes creating them must be strictly construed. Hartford Acc. & Indem. Co. v.

Am. Country Clubs, Inc., 353 So.2d 1147, 1148 (Ala. 1977). If the requirements of the statutes are not strictly complied with, the lien is lost. Home Fed. Sav. & Loan Ass'n v. Williams, 158 So.2d 678, 683 (1963). Thus, it is "well settled that a materialman's or mechanic's lien created by [the Alabama Code] is not perfected until every requirement of the statutes creating such lien has been complied with.... Since the lien is a creature of statute it cannot be extended beyond the purposes and plain requirements of the statutes." Lily Flagg, 232 So.2d at 645-46.

Alabama law provides that a lien will be lost if at least three steps are not performed: (1) provision of statutory notice to the owner of the property pursuant to 1975 Ala. Code § 35-11-210; (2) filing of a verified statement of lien in the probate office of the county where the improvement is located pursuant to § 35-11-213; and (3) filing of a suit to enforce the lien within six months of the maturation of the debt pursuant to § 35-11-221. Bailey Mortgage Co. v. Gobble-Fite Lumber Co., 565

So.2d 138, 141 (Ala. 1990). The first step in this process provides notice to property owners of a potential lien in the absence of a direct contractual relationship between the property owners and the claimant. The second step provides notice of the lien to all other existing and potential interested parties. The third step, imposing a time limitation on the filing of an enforcement action, in theory ensures the speedy disposition of the interests at stake.

B.

Although the general concept of a materialman's lien is relatively straightforward, complications and disputes inevitably arise as a result of the 'relates back' rule. The lien itself "comes into existence immediately when one provides any materials or performs labor upon the property but remains inchoate unless a statement of lien is timely filed with the judge of probate of the county in which the property is situated (§ 35-11-213), and unless suit is timely filed to perfect the materialman's lien (§ 35-11-

221). Once these two steps are timely undertaken, the lien <u>relates back</u> to the date that the materials or labor was provided, and the priority of the lien is determined according to § 35-11-211. Such a lien has priority over encumbrances attaching after the commencement of the work." <u>Metro Bank v. Henderson's Builders Supply Co.</u>, 613 So.2d 339, 340 (Ala. 1993) (emphasis added) (quoting <u>Greene v. Thompson</u>, 554 So.2d 376, 379 (Ala. 1989)).

The 'relates back' rule creates some complicated questions of notice when it comes to the transfer of ownership to subsequent purchasers. On the one hand, the lien cannot be extinguished or defeated merely by the transfer of title; doing so would frustrate the purpose of the lien, which is of course to elevate persons who provide labor or material for the improvement of real estate from the status of general creditors to that of secured creditors. On the other hand, the 'relates back' rule entails a substantial risk of unfairness to an innocent purchaser without notice who takes title after


work commences but before the verified lien statement is even filed.

Therefore, it appears that Alabama courts implement the 'relates back' rule in the following form: purchasers and mortgagees who acquire title after commencement of work on a property but before perfection of a materialman's lien are bound by the lien if they had notice (actual or constructive) of the facts on which the lien was predicated. If the transfer of title takes place after a verified statement of lien is timely filed, then the purchaser has constructive (record) notice. Greene, 554 So.2d at 380; see also 1 Evans, supra, § 32.17[c], at 32.69. But if the transfer takes place before the filing of the lien statement, then the subsequent purchaser is not bound absent actual notice. Benson Hardware Co. v. Jones, 135 So. 441, 442 (Ala. 1931); see also Guaranty Pest Control, Inc. v. Commercial Inv. & Dev. Corp., 264 So.2d 163, 166 (Ala. 1972); Meads v. Dial Finance Co. of Gadsden, 319 So.2d 281, 283 (Ala. Civ. App. 1975).

Yet it must be emphasized that in all events, it is a prerequisite that the materialman not only timely file the verified statement of lien, but properly and timely file suit to enforce the lien as well, in order to comply with the strict statutory requirements for perfection of the lien and assure the statute's intended speedy disposition of the interests at stake. As the Alabama Supreme Court made clear in <u>Lily Flagg Bldg. Supply Co. v. J.M. Medlin & Co.</u>, 232 So.2d 643, 648 (Ala. 1970) (emphases added): "If a lien claimant desires his judgment to be superior to the interest of persons who have acquired their interest in the property after commencement of the work but prior to the filing of the lien statement, <u>he must join them as parties</u> when he files suit to enforce his lien <u>within the six-month period</u>, provided he has actual knowledge or constructive notice of the interest of such persons at the time he files his suit to enforce the lien." Therefore, if the subsequent purchaser or mortgagee <u>is not timely joined as a defendant</u> in a suit to enforce the lien, then it is of no consequence whether such person had notice,

actual or constructive, of the lien; such person's interest becomes superior to that of the materialman upon the expiration of the six-month statutory limitations period.

### C.

Buffalo argues that Hutto ran afoul of <u>Lily Flagg</u>'s joinder rule by suing Bailey, but not the Bank of Wedowee, since the bank had obtained an interest in the property prior to the filing of the verified lien statement and Hutto had notice of the bank's interest in the property at the time it filed suit. Buffalo contends that it took the property free and clear of the materialman's lien because Hutto failed to perfect it according to statutory requirements.

Hutto counters that the <u>Lily Flagg</u> joinder rule does not apply in this case because the bank and Buffalo had <u>actual</u> notice of Hutto's work on the property giving rise to the lien. <u>See</u> <u>Benson Hardware</u>, 135 So. at 442 ("Purchasers acquiring title in the meantime were bound by

the lien if they had notice of the facts on which the lien was predicated."). That is, according to Hutto, it was unnecessary to join the bank as a defendant within the six-month statutory period because both the bank and Buffalo knew about the lien.

The court concludes that Buffalo's argument is the correct one.

To reach its conclusion, the court begins by analyzing the extent to which <u>Lily Flagg</u> overrules <u>Benson Hardware</u>. As stated in <u>Benson Hardware</u>, purchasers and mortgagees who acquire title after commencement of work on a property but before perfection of a materialman's lien are bound by the lien if they had actual notice of the facts on which the lien was predicated. 135 So. at 442. It is likely that, even after <u>Lily Flagg</u>, <u>Benson Hardware</u>'s actual-notice principle remains good law at least in circumstanves where a materialman <u>timely</u> seeks to enforce a lien against a purchaser who took title after work commenced but before the materialman filed a verified statement of lien. <u>See, e.g.</u>, <u>Meads v. Dial Finance Co.</u>

17

of Gadsden, 319 So.2d 281, 283 (Ala. Civ. App. 1975) (finding that defendant land owner was an innocent purchaser without constructive or actual notice of the facts giving rise to the lien). In such cases, the priority of the lien relates back to the time when the work commenced, and subsequent purchasers with actual or constructive notice of the materialman's improvements take the property subject to the lien. See Metro Bank, 613 So.2d at 340; Greene, 554 So.2d at 379-80.

However, Lily Flagg poses a somewhat different scenario: if the materialman files suit to enforce the lien within the six-month statutory period but does not join as defendants persons who have taken interest in the property subsequent to the commencement of the work and of whose interest the materialman has actual or constructive notice, can the materialman amend its complaint to join such persons after the six-month period has elapsed and still retain priority of title over such persons? The answer, according to the holding of Lily Flagg, is no, for the purpose of the six-month provision in the lien statute

is the timely disposition of the property interests at stake and this purpose cannot be achieved absent the presence in the lawsuit of all those persons who have taken interest in the property subsequent to the commencement of the work and of whose interest the materialman has actual or constructive notice. To the extent that Benson Hardware suggests otherwise in circumstances where the subsequent purchaser has actual notice of the improvements made to the property, Lily Flagg overruled it. See Lily Flagg, 232 So.2d at 649. Benson Hardware's actual-notice principle operates within the six-month statutory period, but does not toll it.

Here, the Bank of Wedowee acquired an interest in the property as mortgagee in August 2002, before the verified statement of lien was filed, and then took ownership of the property through foreclosure and auction in November 2003, before Hutto first filed suit to enforce the lien. When Hutto did file suit, it did not join the bank as a defendant within the six-month statutory period, despite having notice of the bank's interest in the property.

Under Lily Flagg, that omission cost Hutto the priority of its interest over that of the bank, and therefore over that of the bank's successors in interest. Because Hutto did not join the bank as a defendant in a suit to enforce the lien within the six-month statutory period, Buffalo purchased the property from the bank free and clear of the lien. Hutto therefore cannot look to Buffalo for satisfaction of the lien, nor can it demand a forced sale of the property which Buffalo now holds free and clear of the lien.

Accordingly, summary judgment is due to be granted in favor of Buffalo; an appropriate judgment will be entered.

DONE, this the 21st day of May, 2007.

                     /s/ Myron H. Thompson
                     UNITED STATES DISTRICT JUDGE